Filed 3/6/13  Gonzalez v. Downtown LA Motors CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| OSCAR GONZALEZ et al., | B235292 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC350769) |
| v. | |
| DOWNTOWN LA MOTORS, LP et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Mary H. Strobel, Judge.  Affirmed.

Dickstein Shapiro, Arthur F. Silbergeld and Jennifer A. Awrey; Greines, Martin, Stein & Richland, Robin Meadow, Cynthia E. Tobisman, and Alana H. Rotter for Defendants and Appellants.

Gartenberg Gelfand Hayton & Selden and Aaron C. Gundzik; Law Offices of Neal J. Fialkow and Neal J. Fialkow for Plaintiffs and Respondents.

Curiale Hirschfeld Kraemer LLP and Felicia R. Reid for National Automobile Dealers Association as Amicus Curiae on behalf of Defendants and Appellants.

Nossaman LLP and John T. Kennedy for California Automotive Business Coalition as Amicus Curiae on behalf of Defendants and Appellants.

Fine, Boggs & Perkins LLP, John P. Boggs and David J. Reese for California New Car Dealers Association and Alliance of Automobile Manufacturers as Amicus Curiae on behalf of Defendants and Appellants.

Altshuler Berzon LLP, Eve H. Cervantez and Eileen B. Goldsmith for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Respondents.

_____

In this wage and hour class action, the issue presented is whether California's minimum wage law requires an employer that compensates its automotive service technicians on a "piece-rate" basis for repair work must also pay those technicians a separate hourly minimum wage for time spent during their work shifts waiting for vehicles to repair or performing other non-repair tasks directed by the employer. The employer contends it was not required to pay the technicians a separate hourly minimum wage for such time because it ensured that a technician's total compensation for a pay period never fell below what the employer refers to as the "minimum wage floor" -- the total number of hours the technician was at work during the pay period (including hours spent waiting for repair work or performing non-repair tasks), multiplied by the applicable minimum wage rate. The employer did so by supplementing a technician's pay, if necessary, to cover any shortfall between the technician's piece-rate wages and the minimum wage floor.

The trial court concluded that the employer's method of compensation violated the minimum wage law because California law does not allow an employer to avoid paying its employees for all hours worked by averaging total compensation over total hours worked in a given pay period. The trial court cited *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314 (*Armenta*), as support for its ruling.

We too find the court's reasoning in *Armenta* to be persuasive. Applying that reasoning here, we conclude that class members were entitled to separate hourly compensation for time spent waiting for repair work or performing other non-repair tasks directed by the employer during their work shifts, as well as penalties under Labor Code section 203, subdivision (a). We therefore affirm the judgment.

2

## BACKGROUND

### The parties

Defendant and appellant Downtown LA Motors, LP doing business as Downtown LA Motors Mercedes Benz is an automobile dealership that sells and services Mercedes-Benz automobiles. Defendant Shammas Automotive Holdings, Inc. is its owner. Those entities are referred to collectively as DTLA.

Plaintiffs are a class of 108 automotive service technicians who worked for DTLA between April 2002 and June 2008.

### DTLA's compensation system

DTLA compensates its service technicians on a piece-rate basis, which differs from an hourly wage method in that technicians are paid primarily on the basis of repair tasks completed. Under DTLA's piece-rate system, technicians are paid a flat rate ranging from $17 to $32, depending on the technician's experience, for each "flag hour" a technician accrues. Flag hours are assigned by Mercedes-Benz to every task that a technician performs on a Mercedes-Benz automobile and are intended to correspond to the actual amount of time a technician would need to perform the task. A DTLA technician who completes a repair task accrues the number of flag hours that Mercedes-Benz assigns to that task, regardless of how long the technician actually took to complete it. DTLA technicians accrue flag hours only when working on a repair order.

DTLA calculates its technicians' pay for an 80-hour pay period by multiplying flag hours accrued during that pay period by the technician's applicable flat rate. For example, a technician with a flat rate of $26 who accrued 150 flag hours in a pay period would earn 150 x $26 or $3,900.

In addition to tracking a technician's flag hours, DTLA also keeps track of all the time a technician spends at the work site whether or not the technician is working on a repair order. At the end of each pay period, DTLA calculates how much each technician would earn if paid an amount equal to his total recorded hours "on the clock" multiplied by the applicable minimum wage. DTLA refers to this amount as the "minimum wage

3

floor." If a technician's flat rate/flag hour pay falls short of the minimum wage floor, DTLA supplements the technician's pay in the amount of the shortfall.[1]

**Plaintiffs' experience**

Plaintiffs worked eight-hour shifts. During their shifts, plaintiffs were required to remain at DTLA's place of business and had to obtain permission to leave during a shift if they were not working on a repair order. Plaintiffs were also required to clock in when they arrived for work, clock in and out for lunch, and clock out at the end of their shift.

Plaintiffs regularly did not have repair work to do because there were not enough vehicles to service. When this occurred, plaintiffs had to remain at work, and those who asked to leave early were told that they needed to stay because customers might come in. Plaintiffs accrued no flag hours during time spent waiting for cars to repair. While waiting for repair work, plaintiffs were expected to perform various non-repair tasks, including obtaining parts, cleaning their work stations, attending meetings, traveling to other locations to pick up and return cars, reviewing service bulletins, and participating in on-line training. They accrued no flag hours while performing these non-repair tasks.

**The instant lawsuit**

Plaintiffs filed the instant action against DTLA claiming that DTLA violated California law by failing to pay technicians a minimum wage during their waiting time -- periods of time they were on the clock, but waiting for repair orders or performing other non-repair tasks. Plaintiffs also claimed that technicians terminated from employment during the class period were entitled to penalties under Labor Code section 203, subdivision (a) because DTLA had failed to pay these technicians all the wages they were due upon their termination.

The trial court denied cross-motions for summary adjudication filed by the parties as to whether DTLA technicians were entitled to a separate hourly pay for waiting time in

---

[1] DTLA also compensates technicians for overtime by taking into account all the time at the work site, including time not spent on a repair order.

addition to their flag hour pay and minimum wage floor supplement, and the matter proceeded to a bench trial.

The parties presented documentary evidence as well as testimony by class members and expert witnesses regarding the amount of waiting time experienced by class members. Both parties also presented expert testimony as to the amount per pay period that class members either were or were not underpaid.

The trial court issued a proposed statement of decision, to which DTLA objected. After hearing argument on those objections, the trial court issued a final statement of decision on June 20, 2011.

The trial court ruled in favor of plaintiffs, concluding that California law requires class members to be paid for their waiting time between work on repair orders. The trial court found the testimony of plaintiffs' expert to be "credible," and adopted that expert's conclusions that plaintiffs experienced waiting time of 1.85 hours per day on average, that the average amount of unpaid compensation for waiting time per plaintiff was $27.76 per day, and that in total, plaintiffs lost the amount of $553,653 in uncompensated time during the class period. The trial court determined that the value of the class's waiting time, including interest, was $1,555,078 and awarded that sum to plaintiffs. The trial court also awarded plaintiffs penalties in the amount of $237,840 under Labor Code section 203, subdivision (a) for DTLA's willful failure to pay all wages owed them at the time their employment was terminated.

This appeal followed.

## DISCUSSION

### I. Applicable Legal Principles and Standard of Review

California's minimum wage requirements are set forth in wage orders promulgated by the Industrial Welfare Commission (IWC), the agency formerly authorized to regulate working conditions in California. (*Martinez v. Combs* (2010) 49 Cal.4th 35, 54-55.) Although the IWC was defunded in 2004, its wage orders remain in effect. (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 145, fn. 1.)

5

Wage orders are quasi-legislative regulations and are construed in accordance with the ordinary principles of statutory interpretation.  (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 568 (*Aleman*).)  Under those principles, our analysis begins by ascertaining the legislative intent underlying the wage order "so that we may adopt the construction that best effectuates the purpose of the law.  [Citation.]" (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.)  To do so, we first examine the words of the wage order as the best indication of legislative intent.  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).)  Those words should be given their ordinary and usual meaning and should be construed in their statutory context.  (*Ibid.*)  Judicial construction that renders any part of the wage order meaningless or inoperative should be avoided.  (*Ibid.*)

If the language of the wage order is clear, it is applied without further inquiry.  (*Aleman, supra*, 209 Cal.App.4th at p. 568.)  If the language can be interpreted to have more than one reasonable meaning, a court may consider "'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'  [Citation.]" (*Id.* at pp. 568-569.)

"State wage and hour laws 'reflect the strong public policy favoring protection of workers' general welfare and "society's interest in a stable job market." [Citations.]' [Citations.]" (*Cash v. Winn* (2012) 205 Cal.App.4th 1285, 1297 (*Cash*).)  They are therefore liberally construed in favor of protecting workers.  As our Supreme Court has stated, "'[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' [Citations.]" (*Brinker, supra*, 53 Cal.4th at pp. 1026-1027; see also *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [given the Legislature's remedial purpose, "statutes governing conditions of employment are to be construed broadly in favor of protecting employees"].)

6

A reviewing court determines the meaning of a wage order de novo. (*Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1253.)

## II.  Wage Order No. 4

The wage order at issue in this case is Wage Order No. 4-2001,[2] commonly known as Wage Order No. 4.  Subdivision 4(B) of that wage order provides as follows:  "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."  (Cal. Code Regs., tit. 8, § 11040, subd. (4)(B).)

"Hours worked" is defined in subdivision 2(K) of the wage order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so. (Cal. Code Regs., tit. 8, § 11040, subd. (2)(K).)

## III.  The Parties' Contentions

DTLA contends its method of compensating technicians complies with the plain language of Wage Order No. 4 because technicians are paid an amount "not less than" the amount they would have earned had they been paid the applicable hourly minimum wage for "all hours worked" during a given pay period.  DTLA argues that compliance may be achieved by supplementing a technician's piece-rate wages in an amount necessary to cover any shortfall between those wages and the "minimum wage floor," or the amount the technician would have earned if paid an hourly minimum wage for all hours "on the clock," including waiting time, during a pay period.

Plaintiffs and amicus California Employment Lawyers Association[3] argue that the plain meaning of the term "all hours worked" is "each and every hour" worked and that

---

[2]      We refer to Wage Order No. 4-2001 hereinafter as "Wage Order No. 4" or simply "the wage order."

[3]      We granted applications for leave to file amicus curiae briefs on behalf of plaintiffs by the California Employment Lawyers Association, and on behalf of DTLA by the National Automobile Dealers Association (NADA), the California New Car Dealers

7

technicians should have been separately compensated, at the applicable minimum wage rate, for "each and every hour" of time spent waiting for repair work. The trial court agreed with plaintiffs and cited *Armenta* as support for that interpretation.

DTLA argues that the trial court's interpretation contravenes the plain language of the wage order, which does not distinguish between waiting time and productive time and does not require an employee paid on a piece-rate basis to be compensated separately for waiting time. DTLA and its amici contend that such interpretation undermines the piece-rate compensation system, which is intended to reward technicians for performing repair tasks efficiently. DTLA and its amici further contend *Armenta* does not and should not apply to piece-rate compensation systems such as the one at issue here and that the trial court erred by awarding plaintiffs penalties under Labor Code section 203.

## IV. *Armenta*

In *Armenta*, Division Six of the Court of Appeal, Second Appellate District construed the same language in the same wage order that is at issue here and concluded that it "expresses the intent to ensure that employees be compensated at the minimum wage for *each* hour worked." (*Armenta, supra*, 135 Cal.App.4th at p. 323, italics added.) The court in *Armenta* further concluded that the employer's method of averaging employees' hours worked in a given pay period in order to compute its minimum wage obligations violated the minimum wage law.

The plaintiffs in *Armenta* were employed by a company that maintained utility poles in rural or remote locations. The company provided the employees with a truck that carried the tools and equipment needed to perform the work in the field, and employees were required to travel in the truck from a central meeting place to the various job sites. (*Armenta, supra*, 135 Cal.App.4th at p. 317.) Employees' time was considered "productive" if directly related to maintaining utility poles in the field and "nonproductive" if spent performing other tasks such as traveling to and from a job site,

Association, the Alliance of Automobile Manufacturers, and the California Automotive Business Coalition.

8

loading or maintaining vehicles, and attending safety meetings. (*Ibid*.) Employees were only paid for "productive" time.

The employer argued that its compensation system did not violate state minimum wage laws because under the terms of the employees' collective bargaining agreement, it paid hourly wages substantially higher than the applicable minimum wage and total employee compensation exceeded the product of total hours worked (both paid and unpaid) and the minimum wage, resulting in an average hourly rate that was higher than the applicable minimum wage. (*Armenta, supra*, 135 Cal.App.4th at p. 319.) The court in *Armenta* ruled that the employer had violated the minimum wage law by not compensating employees for travel time and for time spent on daily paperwork. (*Id.* at p. 320.)

As support for its ruling, the *Armenta* court cited a January 29, 2002 opinion letter issued by the Division of Labor Standards Enforcement (DLSE)[4] as persuasive reasoning why, under California law, the employees were entitled to compensation for all hours worked. (*Armenta, supra*, 135 Cal.App.4th at pp. 319-320.) In the opinion letter, the DLSE acknowledged that the minimum wage law is "susceptible" to two "divergent" interpretations, as espoused by the parties in *Armenta* and by the respective parties in the instant case: ""1) that the obligation to pay minimum wages attaches to each and every separate hour worked during the payroll period, and that payment must be made for all such hours on the established payday, or 2) that the obligation to pay minimum wages for the total number of hours worked in the pay period is determined 'backwards' from the date that any payment is due, without considering any hour (or part of any hour) in isolation."" (*Ibid.*) The DLSE endorsed the former interpretation, requiring payment of the minimum wage for "each and every separate hour worked." (*Ibid.*) The DLSE noted that although federal courts had consistently applied the latter interpretation, significant

---

[4]     The DLSE is the state agency empowered to enforce California's wage and hour laws, including IWC wage orders. (Lab. Code, §§ 21, 61, 95, 98-98.7, 1193.5; *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561-562 (*Tidewater*).)

differences between federal and California labor laws required a different approach in California.  (*Ibid.*)

The court in *Armenta* agreed with the DLSE, and distinguished federal case authority applying an averaging formula to assess minimum wage violations.  Among the cases distinguished was a California federal district court decision, *Medrano v. D'Arrigo Bros. Co.* (N.D.Cal. 2004) 336 F.Supp.2d 1053 (*Medrano*), in which agricultural workers who were compensated on a piece-rate basis brought a class action against their employer seeking recovery of minimum wages due for travel time to the fields.  The federal district court in *Medrano* held that the employer complied with the minimum wage requirements so long as a worker was paid no less than the sum the worker would have been paid during the pay period had the employer paid the minimum wage multiplied by total hours worked, including waiting and travel time.  (*Armenta, supra*, 135 Cal.App.4th at p. 322.)  The court in *Armenta* found federal authorities such as *Medrano* to be "of little assistance" in construing California laws and regulations that differed substantially in both language and intent from federal minimum wage laws.  (*Armenta*, at p. 323.)  The *Armenta* court then undertook a comprehensive analysis of Wage Order No. 4 and concluded that "[t]he averaging method utilized by the federal courts for assessing a violation of the federal minimum wage law does not apply here."  (*Ibid.*)

The *Armenta* court focused first on the language of the wage order, noting that it "differ[ed] significantly" from the Federal Labor Standards Act.  (*Armenta, supra*, 135 Cal.App.4th at p. 323.)  For example, subdivision 4(B) of Wage Order No. 4 requires payment of the minimum wage for "*all hours worked*" whereas the federal statute "requires payment of minimum wage to employees who '*in any work week*' are engaged in commerce."  (*Armenta*, at p. 323, italics added.)  The federal language referring to payment "in any work week," the *Armenta* court reasoned, allows an employer to average an employee's total pay over an entire "*work week*."  In contrast, the California wage order's emphasis on "*hours worked*" reflected "the intent to ensure that employees be compensated at the minimum wage for *each hour* worked."  (*Ibid.*, italics added.)

10

After parsing through the regulatory language, the *Armenta* court next considered the wage order in the context of the statutory framework as a whole. The court noted that Labor Code sections 221, 222, and 223 require an employer to pay all employee hours at either the statutory or agreed rate and prohibit an employer from using any part of that rate as a credit against its minimum wage obligation.[5] (*Armenta, supra*, 135 Cal.app.4th at p. 323.) The court concluded that allowing the employer to average its employees' compensation over their total hours worked "contravenes these code sections" by effectively reducing the employees' contractual rate of compensation. (*Ibid.*)

The court then compared California's minimum wage rate with the federal rate and found California law to be more protective of minimum wage employees. On that basis, the court found "a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than federally." (*Armenta, supra*, 135 Cal.App.4th at p. 324.)

Finally, the court in *Armenta* considered "the policies underlying California's minimum wage law and regulations" which "reflect a strong public policy in favor of full payment of wages for all hours worked." (*Armenta, supra*, 135 Cal.App.4th at p. 324.) Given that public policy, the court concluded that a method of "averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law is inappropriate." (*Ibid.*) The court in *Armenta* held that use of such an averaging method to determine an employer's minimum wage obligation violates

---

[5]     Labor Code section 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Labor Code section 222 provides: "It shall be unlawful, in case of any wage agreement arrived at through collective bargaining, either willfully or unlawfully or with intent to defraud an employee, a competitor, or any other person, to withhold from said employee any part of the wage agreed upon." And Labor Code section 223 provides: "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

11

California law and that "[t]he minimum wage standard applies to each hour worked by [the employees] for which they were not paid." (*Ibid.*)

## V. *Armenta's* Applicability to the Instant Case

### A. *The plain language of Wage Order No. 4 covers piece-rate compensation*

The court in *Armenta* construed Wage Order No. 4 to preclude an employer from averaging an employee's compensation over the total number of hours worked to determine compliance with minimum wage obligations. The principal argument advanced by DTLA and its amici is that *Armenta* concerned only hourly employees and the *Armenta* court's construction of Wage Order No. 4 should not be applied to workers who are compensated on a piece-rate basis. But this argument requires a construction that is contrary to the plain language of the wage order.

By its terms, Wage Order No. 4 does not allow any variance in its application based on the manner of compensation. Subdivision 1 of the wage order states that subject to exceptions that are not applicable here: "This order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations *whether paid on a time, piece rate, commission, or other basis*." (Cal. Code Regs., tit. 8, § 11040, subd. 1, italics added.) Subdivision 4(B) similarly requires uniform application of the minimum wage requirements regardless of how an employee is paid: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, *whether the remuneration is measured by time, piece, commission, or otherwise*." (Cal. Code Regs., tit. 8, § 11040, subd. (4)(B), italics added.) That DTLA compensated its technicians on a piece-rate basis is not a valid ground for varying either the application or interpretation of the wage order.

### B. *Federal courts have applied* Armenta *to piece-rate workers*

DTLA's attempt to limit *Armenta* to hourly workers has been rejected by federal district courts applying California's minimum wage law. (See, e.g., *Cardenas v. McLane Foodservices, Inc.* (C.D.Cal. 2011) 796 F.Supp.2d 1246 (*Cardenas*); *Carillo v. Schneider Logistics, Inc.* (C.D.Cal. 2011) 823 F.Supp.2d 1040.) Of these federal cases, *Cardenas* is

12

instructive as it involved truck drivers who were paid on a piece-rate basis and who claimed their employer failed to compensate them for time spent each day waiting for customers and performing pre- and post-shift duties such as conducting vehicle inspections and safety checks and picking up keys and manifests. (*Cardenas, supra*, 796 F.Supp.2d at p. 1249.) The employer argued that it paid the truck drivers substantially more than the minimum wage for all their working hours and that *Armenta* should not apply because that case did not involve a piece-rate compensation system. The *Cardenas* court rejected this distinction, stating: "Though *Armenta* did not involve a piece-rate formula, and involved an employer who violated an explicit agreement, those distinctions do not detract from the decision's holding that '[t]he averaging method used by the federal courts for assessing a violation of minimum wage law does not apply' to California law-based claims." (*Cardenas, supra*, at p. 1252.) The *Cardenas* court then held that "a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked." (*Ibid*.)

Like the court in *Cardenas*, we find the court's reasoning in *Armenta* to be equally applicable to employees compensated on a piece-rate basis.

### C. Aleman *does not compel a different result*

DTLA contends that our decision in *Aleman* supports its position that an employer may satisfy its minimum wage obligations by ensuring that an employee's overall wages reach a certain threshold amount. *Aleman* is inapposite. That case concerned split shift workers and the subdivision of Wage Order No. 4 applicable to such workers (subdivision 4(C), rather than 4(B), the subdivision applicable here). Our decision in *Aleman* did not address the *Armenta* court's interpretation of subdivision 4(B) of the wage order, nor did it validate the interpretation advanced by DTLA.

### D. *The absence of a collective bargaining agreement is not a valid basis for distinguishing* Armenta

DTLA argues that the *Armenta* court's interpretation of Wage Order No. 4 should not apply here because the court's reasoning was premised in part on Labor Code

13

sections 221, 222, and 223, which are inapposite to the instant facts. Those statutory provisions do not apply, DTLA maintains, because it did not collect or receive any previously paid wages from its employees, it does not have a collective bargaining agreement or any other agreement setting a wage rate higher than the minimum hourly wage, and it did not secretly pay a lower amount than promised to its technicians.

Labor Code sections 221, 222, and 223 govern an employer's obligation to pay "wages," a term that is defined to include piece-rate compensation as well as hourly pay.[6] Averaging piece-rate wages over total hours worked results in underpayment of employee wages required "by contract" under Labor Code section 223, as well as an improper collection of wages paid to an employee under Labor Code section 221, as illustrated by the following example: a technician who works four piece-rate hours in a day at a rate of $20 per hour and who leaves the job site when that work is finished has earned $80 for four hours of work. A second technician who works the same piece-rate hours at the same rate but who remains at the job site for an additional four hours waiting for customers also earns $80 for the day; however, averaging his piece-rate wages over the eight-hour work day results in an average pay rate of $10 per hour, a 50 percent discount from his promised $20 per hour piece-rate. The second technician forfeits to the employer the pay promised "by statute" under Labor section 223 because if his piece-rate pay is allocated only to piece-rate hours, he is not paid at all for his nonproductive hours.

The DLSE applied this same analysis in the January 29, 2002 opinion letter that the court in *Armenta* found persuasive:

> "[A]ll hours for which the employees are entitled to an amount equal or greater than the minimum wage pursuant to the provisions of the CBA [collective bargaining agreement] or other contract must be compensated precisely in accordance with the provisions of the CBA or contract; and all other hours (or parts of hours) which the CBA or contract explicitly states

---

[6] Labor Code section 200 provides in part: "As used in this article: [¶] (a) 'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

14

will be paid at less than the minimum age, but which constituted 'hours worked' under state law, must be compensated at the minimum wage. Averaging of all wages paid under a CBA or other contract, within a particular pay period, in order to determine whether the employer complied with its minimum wage obligations is not permitted under these circumstances, for to do so would result in the employer paying the employees less than the contract rate for those activities which the CBA or contract requires payment of a specified amount equal to or greater than the minimum wage, in violation of Labor Code [sections] 221-223."

(Cal. Div. of Labor Standards, "Hours of Work" for Public Transit Employees Required to Start and End Their Shifts at Different Locations" (Jan. 29, 2002), p. 11.)[7]  The foregoing analysis is not limited to collective bargaining agreements, as DTLA suggests.  It applies whenever an employer and employee have agreed that certain work will be compensated at a rate that exceeds the minimum wage and other work time will be compensated at a lower rate.  (*Ibid.*)

*E.  The* **Armenta** *court's interpretation is not inconsistent with California's method for calculating overtime for piece-rate employees*

DTLA's amici argue that the *Armenta* court's prohibition against averaging should not be applied to piece-rate workers because doing so would conflict with statutorily authorized methods for calculating overtime for such workers.  They cite Labor Code section 510 and section 49.2.1.2 of the DLSE "Enforcement Policies and Interpretations Manual (Revised)" (DLSE Manual), as support for the position that piece-rate pay alone fully compensates employees for all hours worked and as authorization for averaging an

---

**7**    NADA cites pre-2002 DLSE interpretive bulletins that allowed averaging piece-rate pay over total hours worked to determine compliance with minimum wage obligations as "historical guidance" on the issue and as support for such averaging now. Interpretive policies contained in earlier DLSE manuals have no persuasive value and are entitled to no deference (*Tidewater, supra*, 14 Cal.4th at p. 572; *Cash, supra*, 205 Cal.App.4th at p. 1302), especially if they conflict with a subsequently issued DLSE opinion letter that reasonably interprets a wage order.  (See *Cash*, at p. 1302.)  Equally unpersuasive is DTLA's reliance on IWC proceedings in 1951 concerning proposed amendments to a different wage order applicable to piece-rate agricultural workers.

employee's piece-rate compensation over total hours worked when assessing compliance with minimum wage requirements.

Neither Labor Code section 510 nor section 49.2.1.2 of the DLSE Manual validates the type of averaging DTLA and its amici advocate. Labor Code section 510 requires employees to be paid not less than one and one-half times their "regular rate of pay" for all hours worked in excess of eight in a day or 40 in a work week. The "regular rate of pay" in a piece-rate system is calculated by dividing the employee's "total earnings" for the week, or in the alternative, to pay one and one-half times the employee's piece-rate for all overtime hours. (DLSE Manual, § 49.2.1.2.)[8] Neither Labor Code section 510 nor the DLSE Manual limits "total earnings" to piece-rate compensation only. Rather, section 49.1.2.3 of the DLSE Manual, which specifies what must be included in calculating the "regular rate of pay," states that "[a]ny sum paid for hours worked must, of course, be included in the calculation." That calculation accordingly may include both piece-rate pay and waiting time pay. Paying plaintiffs for their waiting time, as the trial court required here, is not inconsistent with the method specified in the DLSE Manual for calculating overtime.

The DLSE method for calculating overtime for piece-rate workers does not determine whether the piece-rate alone lawfully compensates an employee for all hours worked. That method does not specify what amounts must be included in an employee's "total earnings." The trial court in this case concluded that such earnings, for purposes of

_____

[8]      Section 49.2.1.2 of the DLSE Manual provides in relevant part: "Either of the following two methods can be used to determine the regular rate for purposes of computing overtime compensation: [¶] 1. Compute the regular rate by dividing the total earnings for the week, including earnings during overtime hours, by the total hours worked during the week, including the overtime hours. For each overtime hour worked, the employee is entitled to an additional one-half the regular rate for hours requiring time and one-half and to an additional full rate for hours requiring double time. This is the most commonly used method of calculation. [¶] 2. Using the piece or commission rate as the regular rate and paying one and one-half times this rate for production during overtime hours. This method is rarely used."

determining compliance with minimum wage requirements, should include not less than the minimum wage for waiting time hours not compensated by the piece-rate.

### F.  DLSE enforcement policies do not support DTLA's position

DTLA and its amici next claim that the DLSE's enforcement policies state that a piece-rate employer need not pay an employee for non-productive time unless the employer affirmatively directs the employee to perform non-piece-rate work.  They argue that because plaintiffs were not idle as a result of DTLA's direction, DTLA was not required to compensate plaintiffs for the time they spent waiting for vehicles to repair. They cite the following sections of the DLSE Manual as support for this position:

> "47.7  All Hours Must Be Compensated Regardless of Method Used in Computation.  DLSE has opined that employees must be paid at least the minimum wage for all hours they are employed.  Consequently, if, as a result of the directions of the employer, the compensation received by piece rate or commissioned workers is reduced because they are precluded, by such directions of the employer, from earning either commissions or piece rate compensation during a period of time, the employee must be paid at least the minimum wage (or contract hourly rate if one exists) for the period of time the employee's opportunity to earn commissions or piece rate."

> "47.7.1  As an example, if piece rate workers are required to attend a meeting during which, of course, they would not be able to earn compensation at the piece rate, the employer would be required to pay those workers at least the minimum wage (or the contract hourly wage, if one exists) during such period.  (For discussion of the legal rationale underlying this enforcement policy, see [Opinion Letter] 2002.01.29)."

The record shows that the time plaintiffs spent during their work shifts performing non-piece-rate tasks were at DTLA's direction.  Plaintiffs were not allowed to leave DTLA's premises while waiting for vehicles to repair but were expected to perform various non-repair tasks such as cleaning their work areas, obtaining parts, participating in on-line training, and reviewing service bulletins.  All of these tasks were "at the direction of the employer."  Time spent waiting for vehicles to repair was also "at the direction of the employer" because DTLA required plaintiffs to remain at work even if there were no vehicles to repair.

17

### *G. DTLA's remaining arguments do not compel a reversal of the judgment*

DTLA's amici argue that the prohibition against averaging compensation across all work hours should not apply to piece-rate compensation systems because piece-rate employees can increase their regular rate of pay by working longer hours. The presumption that plaintiffs in this case could maximize their income by performing piece-rate work throughout the day is belied by the record, which shows that plaintiffs spent a significant amount of time doing other work or waiting for customers. The trial court credited evidence that plaintiffs spent, on average, four-tenths of an hour each day waiting for cars to repair during the period from April 2002 to July 2008 and nearly two hours per day waiting for cars to repair in later time periods.

DTLA and its amici argue that affirming the judgment in this case will require piece-rate employers to pay additional hourly wages for every mandatory rest break, will have far-reaching negative consequences on all incentive compensation systems in California, including commission payment plans, and will open the floodgates to litigation challenging incentive-based compensation systems. The instant case concerns minimum wage obligations for time spent by a piece-rate employee waiting for vehicles to repair and performing non-piece-rate tasks directed by the employer. The trial court did not address, and we do not consider, any obligation with respect to mandatory rest breaks. The instant case concerns only automotive service technicians compensated on a piece-rate basis. We do not address or consider employees who are compensated under commission payment plans or any other incentive-based compensation systems.

Affirming the judgment in the instant case will not, as DTLA claims, undermine its technicians' ability and incentive to earn more than the minimum wage. Under DTLA's flag hour system, technicians earn significantly more by working on cars than waiting for vehicles to repair. They will still have the financial incentive to accrue flag hours in order to increase their earnings.

## VI. Penalties Under Labor Code Section 203

Penalties under Labor Code section 203 are properly awarded when an employer "willfully fails to pay" an employee all wages owed at the times specified in Labor Code

18

section 201, for discharged employees, and in Labor Code section 202, for employees who quit.  (Lab. Code, § 203, subd. (a).)  "'[T]o be at fault within the meaning of [section 203], the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due.  As used in section 203, "willful" merely means that the employer intentionally failed or refused to perform an act *which was required to be done*.'  [Citation.]  A good faith belief in a legal defense will preclude a finding of willfulness.  [Citation.]"  (*Armenta, supra*, 135 Cal.App.4th at p. 325.)  A trial court's finding of willfulness under Labor Code section 203 is reviewed for substantial evidence.  (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1201.)

DTLA challenges the $237,840 in waiting time penalties awarded under Labor Code section 203 as improper because the award conflicted with the trial court's finding, made in connection with its denial of plaintiffs' claim for liquidated damages, "that DTLA's actions were taken in good faith and with a reasonable basis for believing the actions were not in violation of the law."  DTLA did not object to the portion of the trial court's statement of decision regarding penalties under  Labor Code section 203.  Absent such an objection, we make all implied findings necessary to support the trial court's penalty award.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

There is substantial evidence in the record to support an implied finding of willfulness.  Although DTLA stated that its policy was to supplement its technicians' pay when flag hour compensation fell below the minimum wage floor, there was evidence that DTLA did not always follow this policy.  DTLA's expert witness testified that he reviewed technicians' pay records and found instances when DTLA failed to cover shortfalls between piece-rate wages and the minimum wage floor.  DTLA's failure to do so was a sufficient basis for the imposition of penalties under Labor Code section 203.  The trial court accordingly did not err by awarding such penalties.

**DISPOSITION**

The judgment is affirmed.  Plaintiffs are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

CHAVEZ

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST