Filed 9/18/18; Certified for Publication 10/4/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CERTIFIED TIRE AND SERVICE CENTERS WAGE AND HOUR CASES | D072265 |
| | (San Diego County No. JCCP4762; San Diego County No. 37-2013-000381-CU-OE-CTL; Riverside County No. RIC1307773) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge. Affirmed.

Law Offices of Kevin T. Barnes, Kevin T. Barnes, Greg Lander; Scott Cole & Associates, Jeremy A. Graham; Righetti Glugoski, Matthew Righetti, John Glugoski, and Michael C. Riguetti for Plaintiffs and Appellants.

Carothers DiSante & Freudenberger, Timothy M. Freudenberger, Robin E. Largent, and Garrett V. Jensen for Defendants and Respondents.

This is an appeal in a certified wage and hour class action following a judgment after a bench trial in favor of defendants Certified Tire and Services Centers, Inc. (Certified Tire) and Barrett Business Services. Inc. (collectively defendants). Plaintiffs contend that Certified Tire violated the applicable minimum wage and rest period requirements by implementing a compensation program, which guaranteed its automotive technicians a specific hourly wage above the minimum wage for all hours worked during each pay period but also gave them the possibility of earning a higher hourly wage for all hours worked during each pay period based on certain productivity measures.

As we will explain, we conclude that the plaintiffs' arguments lack merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Certified Tire's Compensation Program for Automotive Technicians*

Certified Tire is a business that sells tires and performs automotive repairs for the general public through its 40 stores in California. Certified Tire employs automotive technicians to diagnose and repair customer vehicles.

Throughout the relevant timeframe, technicians at Certified Tire were compensated through the Technician Compensation Program (the TCP). Under the TCP, a technician is paid an hourly wage for all work performed, but the hourly rate earned by a technician varies from pay period to pay period. A technician's hourly rate for the applicable pay period is guaranteed to be *at least* an agreed-upon minimum hourly rate that the technician is assigned at the time of hire, which in all cases *exceeds* the legal

2

minimum wage.[1] Under the TCP, the hourly rate paid to a technician during any given pay period may be higher than the guaranteed minimum hourly rate based on a formula that rewards the technician for work that is billed to the customer by Certified Tire as a separate labor charge.

Under the formula, each billed dollar of labor charged to a customer as a result of the technician's work during the pay period is referred to as the technician's "production dollars."[2] Certified Tire applies the formula by multiplying the technician's production dollars by 95 percent, multiplying that amount by a fixed "tech rate" assigned to the technician depending on experience and qualifications,[3] and then dividing by the total

---

[1] At trial, Certified Tire's president testified that for much of the class period, the lowest guaranteed minimum hourly rate assigned to a technician upon hiring was $10 per hour in Southern California and $11 per hour in Northern California, but those rates had been raised as of January 2016 to $11 per hour and $12 per hour respectively. Depending on experience and qualifications, certain technicians are assigned a greater guaranteed minimum hourly rate at the time of hire, with some assigned a rate as high as $18 per hour.

[2] A technician may perform certain tasks that are billed at a predetermined labor cost to the customer. For example, a document associated with one technician from 2013 shows that a brake fluid exchange was billed to the customer at a predetermined labor cost of $47, and a transmission fluid exchange was billed to the customer at a predetermined labor cost of $58. In addition, technicians perform a variety of tasks that are not assigned a predetermined labor cost but for which the customer is billed at a specific hourly labor rate based on the labor time expected to complete the task, identified on Certified Tire's reports as "shop labor." A technician's production dollars are based on all of the labor charges billed to a customer for the technician's services during the pay period.

[3] The "tech rate" assigned to a technician at the time of hire generally ranges from 28 percent to 34 percent, and a technician may increase his or her "tech rate" in the course of employment by pursuing specific certifications or testing to increase his or her qualifications as a mechanic.

hours worked by the technician during the pay period. By applying this formula, Certified Tire determines the technician's "base hourly rate" for the pay period. If the base hourly rate exceeds the technician's guaranteed minimum hourly rate, the technician is paid the base hourly rate for all time worked during the pay period. If the guaranteed minimum hourly rate is higher than the base hourly rate, the technician is paid the guaranteed minimum hourly rate for all time worked during the pay period.[4] Overtime hours are paid at one and a half time the hourly rate that applies during the pay period.

Technicians at Certified Tire are required to be clocked in during all work hours, except for their lunch period, and they are paid at an hourly rate for all hours on the clock. The hours during which technicians are clocked in at work are reflected in time keeping reports. Technicians take rest breaks as required by law, and they do not clock out while doing so.

Certified Tire's president testified that he designed the TCP to incentivize technicians "to hustle" to get things done, and to make Certified Tire a more competitive employer in the industry by allowing technicians to significantly increase their hourly compensation based on their efficiency without any cap on the amount of compensation. According to Certified Tire's president, some technicians achieve a base hourly rate of up to $70 per hour during a pay period.

---

[4]     For example, a technician with a "tech rate" of 30 percent who generated $5,000 of production dollars in an 80-hour pay period, would achieve a base hourly rate for that pay period of $17.81 (based on $5,000 multiplied by .95, multiplied by .30, divided by 80). Assuming that base hourly rate is higher than the technician's guaranteed minimum hourly rate, the technician would be paid $17.81 multiplied by 80 hours for the pay period, for a total payment of $1,424.80.

Some work activities that the technicians are required to perform do not directly generate production dollars, as those activities are not associated with labor costs charged to a customer. These activities include certain automotive services, including some oil changes and some tire rotations, as well as time spent cleaning or attending meetings. Although technicians do not have the opportunity to *increase* their base hourly rate by participating in activities that do not generate production dollars, those activities are always compensated because technicians get paid an hourly rate for that work, all of which is performed while they are clocked in.

B.     *The Lawsuit*

The instant appeal is based on multiple wage and hour class action lawsuits filed against Certified Tire and Barrett Business Services, Inc.[5] in superior court in Riverside County and San Diego County by plaintiffs Oscar Gutierrez, Pascal Jeandebien, and Michael Rehse. After the lawsuits were coordinated in San Diego County Superior Court,[6] a first amended coordinated complaint was filed.[7] On December 22, 2015, the

---

[5]     According to the evidence at trial, Barrett Business Services, Inc. is the payroll company that Certified Tire employed during some of the class period. No argument was presented at trial concerning the alleged liability of Barrett Business Services, Inc.

[6]     The order granting the petition to coordinate was not included in the Appellants' Appendix. In response to an argument raised in the respondents' brief, plaintiffs have requested that we take judicial notice of an order granting the petition to coordinate dated November 7, 2013. We hereby grant the unopposed request to take judicial notice.

[7]     Among other things, the first amended coordinated complaint alleged causes of action under (1) the Private Attorneys General Act of 2004, Labor Code § 2699, subdivision (a), which provides that a civil penalty assessed by statute for a violation of the Labor Code may be recovered in a civil action brought by aggrieved employees; and

trial court certified the class action with respect to several defined classes, two of which are relevant here: (1) "All Technicians employed by Defendant from March 6, 2009, to the present to whom Defendant failed to pay a separate minimum wage for non-productive time;" and (2) "All Technicians employed by Defendant from March 6, 2009, to the present to whom Defendant failed to pay for off duty rest periods." The trial court also found that Gutierrez, Jeandebien and Rehse (plaintiffs) would adequately represent the class.

The trial court conducted a bench trial in December 2016. In their joint trial readiness conference report, the parties agreed that "[t]he only issue for resolution in Phase I is the legality of [the TCP]. Any other liability and injunctive/damages issues, if necessary, are deferred until after a ruling on Phase I." The parties identified the issue to be determined by the trial court as: "Have Plaintiffs met their burden to show that Certified Tire's Technician Compensation Program violates California law?"

The parties also entered into stipulations concerning the applicable legal standards. Specifically, the parties stipulated that Certified Tire is "governed by the California Labor

_____

(2) Business and Professions Code section 17200 through 17208, alleging unlawful and fraudulent business practices based on violations of Labor Code provisions.

6

Code and Wage Order 4[-2001]."  (Cal. Code Regs., tit. 8, § 11040.)  (Wage Order 4)[8]

The parties agreed that under Wage Order 4, "Every employer shall pay to each

employee, on the established payday for the period involved, not less than the applicable

minimum wage for all hours worked in the payroll period, whether the remuneration is

measured by time, piece, commission, or otherwise."  (Cal. Code Regs., tit. 8, § 11040,

subd. 4(B).)  The parties identified the applicable minimum wage as "not less than nine

dollars ($9.00) per hour for all hours worked, effective July 1, 2014, and not less than ten

dollars ($10.00) per hour for all hours worked, effective January 1, 2016."  In addition,

the parties agreed that Wage Order 4 provides for rest period as follows:  "Every

employer shall authorize and permit all employees to take rest periods, which insofar as

practicable shall be in the middle of each work period.  The authorized rest period time

shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time

per four (4) hours or major fraction thereof.  . . .  Authorized rest period time shall be

counted as hours worked for which there shall be no deduction from wages."  (Cal. Code

Regs., tit. 8, § 11040, subd. 12(A).)

---

8      In California, "wage and hour claims are today governed by two complementary
and occasionally overlapping sources of authority:  the provisions of the Labor Code,
enacted by the Legislature, and a series of 18 wage orders, adopted by the [Industrial
Welfare Commission (IWC)]."  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53
Cal.4th 1004, 1026.)  Here, the parties agree that Wage Order 4 applies, as it pertains to
"all persons employed in professional, technical, clerical, mechanical, and similar
occupations . . . ."  (Cal. Code Regs., tit. 8, § 11040, subd. (1).)  "[M]echanics" are
included by definition under the scope of persons employed in those occupations.  (*Id*.,
subd. (2)(O).)

The trial court held a bench trial at which several witnesses testified, including the plaintiffs, other technicians formerly or currently employed by Certified Tire, supervisors from Certified Tire, a Certified Tire employee in charge of payroll, and Certified Tire's president. The evidence regarding the details of the TCP was largely undisputed, and it was also undisputed that technicians at Certified Tire were required to clock in for all hours while at work, and they took their required rest breaks while clocked in during the work day.

Plaintiffs' counsel argued in closing that Certified Tire was not in compliance with the minimum wage and rest period requirements set forth in Wage Order 4. Relying on case law that prohibits averaging the amount an employee receives during a pay period for non-paid and paid work hours to comply with the minimum wage requirements (see, e.g., *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314 (*Armenta*)), plaintiffs' counsel argued that because of the TCP, Certified Tire was "secretly paying the lower wage— nothing for those non-billed hours—while purporting, making it look like through their averaging, that they're paying at least minimum wage for the non-billed time when, in fact, they're paying nothing for the non-billed time." Plaintiffs' counsel argued that under the TCP, because a technician could not *increase* the base hourly wage when working on activities that did not generate production dollars those hours are all uncompensated, as "[n]ot a penny hits their pocket when they do an oil change, when they attend a meeting, when they do any cleaning." As similarly argued in plaintiffs' trial brief filed at the close of the bench trial, "Technicians earn *no wages* for time spent on tasks that do not generate labor dollars for [Certified Tire] (i.e., oil changes, tire rotations, cleaning, meetings,

8

Preventative Maintenance Analysis (PMA), running errands and waiting for customer cars to work on) since those tasks do not add to 'Production Dollars' under [Certified Tire's] formula." (Italics added). Also referring to the fact that technicians do not have the opportunity to *increase* their production dollars during a rest break because they are not generating labor charged to the customer, plaintiffs' counsel argued that Certified Tire was in violation of the rest period requirement in Wage Order 4. Counsel argued, "I think it's undisputed here that when technicians are on a rest break, they cannot add to their wages during those rest breaks. The wages stay the same." According to plaintiffs, "When Technicians are paid as a percentage of Production Dollars they receive no separate wages for . . . statutorily mandated rest breaks."

The trial court issued a statement of decision in favor of Certified Tire. After extensively setting forth the testimony and evidence presented at trial and the governing case law, the trial court explained that plaintiffs had not established any violation of the wage and hour laws. The trial court stated,

"First, the parties agree that this is not an 'off-the-clock' case. [Certified Tire's] 'Technician's Timekeeping Reports' accurately reflect the times and hours worked by that Technician during the corresponding time period. . . .

"Second, contrary to the Court's concern in *Armenta*, [Certified Tire] has not 'averaged' the technicians' hours to calculate their wages; instead, [Certified Tire] applies the higher base rate, if any, to all of the hours worked—billed and non-billed labor—by the technicians. The Court recognizes that the technicians' production may vary from one day to the next throughout the two week pay period which, as calculated at the end of two weeks, may be different than a snapshot of the technicians' production on any given day. However, it appears to the Court that, to the extent the technicians are entitled to be paid a higher base rate, the averaging, if any, only adds to (as opposed to subtracts from) the technicians' wages.

9

Ultimately, the calculation of the technicians' wages, under this formula, is much more about the technicians' wage 'ceiling' rather than wage 'floor.'

"Third, the Court finds that, based on this record, the technicians have been paid, at all times, a guaranteed minimum wage for all of their hours worked -- billed and non-billed labor. In other words, even during pay periods where the technicians have been wholly unproductive, they have been paid minimum wages which comply with the California wage and hour laws at issue in this case."

The trial court entered judgment in favor of Certified Tire on April 12, 2017. On May 9, 2017, a notice of appeal was filed.[9]

---

[9] The notice of appeal form, as completed by class counsel and filed on May 9, 2017, stated that plaintiff Gutierrez was the party filing the appeal and did not mention the other two plaintiffs. However, as early as the filing of the motion for relief from default in this court on June 27, 2017, and the filing of the Civil Case Information Statement in this court on July 7, 2017, the court filings by plaintiffs have identified all three plaintiffs as the appealing parties, and, consistently, the opening appellate brief states that it is filed on behalf of all three plaintiffs. Accordingly, the omission of the names of the other two plaintiffs in the notice of appeal appears to have been an oversight or a typographical error. In a footnote, the respondents' brief seizes on the content of the notice of appeal and points out that it identified only Gutierrez as the appealing party. Defendants contend that accordingly "Plaintiff Gutierrez is the only Appellant, and any appeal rights on behalf of any other plaintiff or class member have been waived." We disagree, as this case is a certified class action lawsuit. As a result of the order certifying this case as a class action, Gutierrez, along with the two other plaintiffs, are each participating in this litigation in their capacity as class representatives. Accordingly, because of Gutierrez's status as a class representative in a certified class action lawsuit, his notice of appeal served as an appeal on behalf of the entire class, including the other two plaintiffs who fall within the scope of the class. Further, defendants have identified no manner in which they have been prejudiced by omission of the other two plaintiffs from the notice of appeal.

10

II.

DISCUSSION

A.    *Standard of Review*

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo.  [Citation.]  We apply a substantial evidence standard of review to the trial court's findings of fact."  (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)  When the facts are undisputed, "[a] reviewing court determines the meaning of a wage order de novo."  (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 44 (*Gonzalez*).)

Here, plaintiffs state that the evidence is undisputed concerning the details and application of the TCP.  However, they contend that the trial court erred in concluding, based on those undisputed facts, that the TCP does not violate the requirement that Certified Tire pay the minimum wage and provide paid rest periods as set forth in Wage Order 4.  Accordingly, we apply a de novo standard of review to the legal questions presented here.

B.    *Applicable Case Law Regarding Plaintiffs' Minimum Wage and Rest Period Argument*

Plaintiffs' contention that Certified Tire fails to comply with the minimum wage and rest period requirements in Wage Order 4 is based on case law that has developed since *Armenta, supra,* 135 Cal.App.4th 314, was decided in 2005.  Plaintiffs contend that, based on that case law, Certified Tire is violating the rule that "an employer utilizing an activity-based compensation scheme (like Certified Tire's TCP), must *separately*

11

compensate employees for both: (1) time working on tasks which generate no wages; and (2) rest breaks." Based on the same case law, plaintiffs also contend that Certified Tire is impermissibly attempting to establish minimum wage compliance despite its failure to pay for each hour worked by using "an *average* hourly rate for each hour worked." To understand and evaluate plaintiffs' argument we first review the case law upon which Plaintiffs rely.

In *Armenta*, workers who maintained utility poles in the field were paid an hourly wage, which was above the minimum wage, but the employer refused to pay an hourly wage for time spent driving to the job sites or processing paper work. (*Armenta*, *supra*, 135 Cal.App.4th at pp. 317-319.) The employer argued that this practice did not violate the minimum wage requirement for the hours that were uncompensated because "when an employer pays a higher hourly rate, . . . it should be entitled to divide the total number of hours worked into the amount the employee was paid to arrive at an *average hourly wage* and then determine whether the employee's compensation complied with the minimum wage law," which was the approach followed by federal courts applying the federal Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.). (*Armenta,* at pp. 321-322, italics added.) Interpreting Wage Order 4 in light of its language and the surrounding statutory provisions, *Armenta* concluded that "the FLSA model of averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law is inappropriate. The minimum wage standard applies to each hour worked by respondents for which they were not paid. The trial court, therefore, correctly determined that appellant violated [the minimum wage requirement] by failing or

12

refusing to pay for driving time and time spent by foremen processing paperwork." (*Id.* at p. 324.) Accordingly, under *Armenta*, when using an hourly-based compensation system, an employer is required to pay at least the minimum wage for *each* hour worked and may not meet that requirement by showing that the employee was *effectively* paid more than the minimum wage for all time on the job by dividing the amount of the employee's total compensation for the pay period by the total hours worked, even though some time was not separately compensated by an hourly wage.

The rule established by *Armenta*—that employees must be separately compensated at minimum wage or above for all time worked—was subsequently applied by California courts to "piece-rate" compensation programs, in which employees do not receive an hourly wage but are paid based on the tasks they perform. In *Gonzalez, supra,* 215 Cal.App.4th 36, automobile service technicians were paid on a piece-rate basis for their work. Specifically, technicians were "paid a flat rate ranging from $17 to $32, depending on the technician's experience, for each 'flag hour' a technician accrues." (*Id.* at p. 41.) Flag hours were assigned to every task that a technician performs and were intended to correspond to the actual amount of time a technician would need to perform the task. (*Ibid.*) A technician who completed a repair task accrued the number of flag hours assigned to that task, regardless of how long the technician actually took to complete the task. (*Ibid.*) A technician's pay for each 80-hour period was based on the number of flag hours accrued during that pay period multiplied by the technician's applicable flat rate. (*Ibid.*) The technicians accrued no flag hours for performing non-repair tasks, such as

13

cleaning, obtaining parts and participating in training. (*Id*. at p. 42.) Thus, the employees were not directly compensated for non-repair time.

In an attempt to comply with minimum wage requirements, the employer kept track of all the time a technician spent at the work site, whether or not the technician was working on a repair order, and it divided the employee's total earnings over the pay period by the total hours worked to ensure that the employee's *effective* hourly rate was at least at the minimum wage. (*Gonzalez, supra,* 215 Cal.App.4th at pp. 41-42.) If the effective hourly rate was less than the minimum wage, the employer supplemented the technician's pay to reach an effective average hourly rate that equaled the minimum wage. (*Ibid*.) Applying the same analysis used in *Armenta*, *Gonzalez* concluded that under Wage Order 4 an "employer's method of averaging employees' hours worked in a given pay period in order to compute its minimum wage obligations violated the minimum wage law." (*Id*. at p. 46.) Technicians "were entitled *to separate hourly compensation* for time spent waiting for repair work or performing other non-repair tasks directed by the employer during their work shifts." (*Id*. at. pp. 40-41, italics added.) *Gonzalez* explained that the analysis in *Armenta* applied regardless of the fact that the employer "compensated its technicians on a piece-rate basis" rather than based on the payment of an hourly wage. (*Id*. at p. 49.)[10]

_____

10      *Gonzalez* pointed out that several federal district court decisions had applied *Armenta*'s holding to piece-rate compensation programs. (*Gonzalez, supra,* 215 Cal.App.4th at p. 49.)  Here, plaintiffs cite and rely on federal district court decisions reaching the same conclusion regarding piece-rate compensation programs as *Gonzalez*. (*Cardenas v. McLane FoodServices, Inc.* (C.D.Cal. 2011) 796 F.Supp.2d 1246, 1252 [in

14

*Armenta*'s holding also has been extended to the issue of whether an employer paying on a piece-work basis must separately compensate employees for rest periods. In *Bluford v. Safeway Stores, Inc.* (2013) 216 Cal.App.4th 864 (*Bluford*), truck drivers were compensated based on the number of miles driven and other variables, but "none of these components directly compensated for rest periods." (*Id*. at p. 872.) *Bluford* held that "under the rule of *Armenta* . . . rest periods must be separately compensated in a piece-rate system. . . . [¶] Thus, . . . a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law." (*Id*. at p. 872.)[11] We note that effective January 1, 2016, the Legislature enacted Labor Code, section 226.2, which codified the holdings of *Gonzalez* and *Bluford*,

---

a case involving truck driver compensation, the court concluded that "a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked"]; *Ontiveros v. Zamora* (E.D.Cal., Feb. 20, 2009, No. CIV S-08-567LKK/DAD) 2009 WL 425962, at *3 [applying *Armenta's* holding to automobile mechanics compensated on piece rate basis]; *Ridgeway v. Wal-Mart Stores, Inc.* (N.D.Cal. 2015) 107 F.Supp.3d 1044, 1053 [truck drivers paid on a piece-rate basis must be separately compensated for unpaid work activities when under the employer's control]; *Villalpando v. Exel Direct Inc.* (N.D.Cal. 2016) 161 F.Supp.3d 873, 889 (*Villalpando*) [when truck drivers who were paid on a piece-rate basis could not directly earn compensation during pre-trip work hours, the employer could not establish compliance with minimum wage requirements by showing that the drivers' average wages for all hours worked was at or above the minimum wage rate].) As the holdings of those federal cases do not materially differ from the holding of *Gonzalez*, we do not separately discuss them here.

[11] In addition to *Bluford*, plaintiffs cite federal district court cases that follow *Bluford* in recognizing that rest periods must be separately compensated when employees are compensated on a piece-rate basis. (*Villalpando, supra,* 161 F.Supp.3d at p. 889; *Perez v. Sun Pacific Farming Co-op., Inc.* (E.D.Cal., June 8, 2015, No. 1:15-CV-00259-KJM-SKO), 2015 WL 3604165.)

providing for separate payment for nonproductive work time and for rest periods when employees are compensated on a piece-rate basis, but creating certain safe harbors for employers. (See *Fowler Packing Company, Inc. v. Lanier* (9th Cir. 2016) 844 F.3d 809, 812-813 [describing Lab. Code, § 226.2].)

The principle established in *Armenta* has also been applied to the issue of how rest periods are compensated in a commission-based compensation system. In *Vaquero v. Stoneledge Furniture LLC* (2017) 9 Cal.App.5th 98, 102 (*Vaquero*), furniture store employees were compensated on a commission basis, but the system "did not include any component that directly compensated sales associates for rest periods." (*Id*. at p. 114.) *Vaquero* concluded that an employer was required "to separately compensate employees for rest periods if an employer's compensation plan does not already include a minimum hourly wage for such time." (*Id*. at p. 110.)[12]

C.    *The Case Law Cited by Plaintiffs Does Not Establish That Certified Tire Violated Minimum Wage or Rest Period Requirements*

As the centerpiece of their argument that Certified Tire's TCP violates the minimum wage and rest period requirements, plaintiffs rely on *Armenta*, *Gonzalez, Bluford and Vaquero* for the principle that "an employer utilizing an activity-based compensation scheme . . . must separately compensate employees for both: (1) time working on tasks which generate no wages; and (2) rest breaks." Plaintiffs contend that

---

12    Similarly, in *Balasanyan v. Nordstrom, Inc*. (S.D.Cal. 2012) 913 F.Supp.2d 1001, 1007, a federal district court applied *Armenta* to conclude that department store employees who worked on commission were required to be directly compensated at no less than minimum wage for all activities that did not allow them to earn a commission.

the TCP violates these principles because, according to them, technicians earn "*no wages*" when performing work that does not generate production dollars, and therefore "the TCP violates the minimum wage requirements by failing to provide the required separate compensation" for each hour worked. As we will explain, plaintiffs' argument that the technicians are not "separately" paid for non-productive work in an "activity-based compensation system" suffers from two central flaws, which we discuss in turn.

First, although TCP has *similarities* to a piece-rate system or a commission-based system because technicians are able to increase their earnings by increasing their production, the TCP is not an "activity-based compensation system" as plaintiffs contend. Instead, it is an *hourly-rate system* in which technicians are paid at a single hourly rate for *all* hours worked during a pay period. *Armenta*, *Gonzalez*, *Bluford* and *Vaquero* are not applicable, as those cases involved either (1) an hourly compensation system including off the clock work; (2) a piece-rate system; or (3) a commission-based system. In contrast, Certified Tire applies an hourly based system that compensates technicians for all the time that they are at work. Technicians earn wages for every single work activity that they perform, including waiting for customers and performing tasks that do not have billed labor costs associated with them. Although the hourly rate differs from pay period to pay period because technicians have the opportunity to *increase* their guaranteed minimum hourly rate based on the generation of production dollars, the technicians are always paid on an hourly basis for all hours worked at a rate above minimum wage *regardless* of their productivity, and *regardless* of the type of activity in which they were engaged during those hours.

17

Second, plaintiffs' argument depends on their premise that technicians are paid no wages for hours that do not generate production dollars. Plaintiffs contend that, as in *Armenta*, *Gonzalez*, *Bluford* and *Vaquero,* the technicians were not separately compensated for the time that they spent at work performing "non-productive" tasks. To support this argument plaintiffs ask us to compare the wages that would be earned by two hypothetical technicians at Certified Tire. In an attempt to illustrate plaintiffs' point, we turn to the following scenario: assume one technician generates $2,000 of production dollars in a 30-hour pay period working solely on tasks that generate production dollars. A second technician generates $2,000 of production dollars in a 40-hour pay period, devoting 10 hours of the 40 hours to tasks that do not generate production dollars. Further assume both technicians have a "tech rate" of 30 percent. The base hourly rate for the first technician is $19 per hour ($2000 x .95 x .30 ÷ 30 = $19). The base hourly rate for the second technician is $14.25 per hour ($2000 x .95 x .30 ÷ 40 = $14.25). For 30 hours of work the first technician gets paid $570 during the pay period ($19 x 30 = $570). For 40 hours of work the second technician also gets paid $570 during the pay period ($14.25 x 40 = $570).[13]

According to plaintiffs, a hypothetical such as this illustrates that because both technicians are taking home the same amount in their paychecks (i.e., $570) even though the second technician worked 10 hours more than the first technician while involved in

_____

[13] The hypothetical situation assumes no overtime hours were worked by either technician during the pay period.

tasks that did not generate production dollars, the second technician is not compensated *at all* for the last 10 hours of the pay period. We disagree.

In the scenario set forth above, the second technician is paid at an hourly rate that is above the minimum wage for *all* hours work regardless of the type of work involved. The technician also receives paid rest breaks at above minimum wage for *all* the time on the clock, even if no production dollars are being generated during the rest period. Put simply, all time on the clock is *directly* and *expressly* compensated by Certified Tire at an hourly rate that exceeds the minimum wage. As we find no merit to plaintiffs' contention that the second technician is receiving no wages at all for the time spent on tasks that do not generate production dollars, we reject the plaintiffs' argument that Certified Tire must make a separate additional payment to the technician to comply with the minimum wage and rest period requirements.

Further, contrary to plaintiffs' contention, because technicians are paid at an hourly rate that is above minimum wage for each hour on the clock, this case does not involve *averaging* of an employee's hourly rate to show compliance with minimum wage requirements. In *Armenta* and *Gonzalez*, the employers unsuccessfully argued that they should be able to divide the amount they paid their employees by the total hours worked to establish they had complied with minimum wage requirements for that pay period. (*Armenta*, *supra*, 135 Cal.App.4th at pp. 321-322; *Gonzalez, supra,* 215 Cal.App.4th at pp. 41-42.) Here, Certified Tire does not need to show compliance with minimum wage requirements by dividing the total amount paid during a pay period by the total hours worked. Instead, Certified Tire *directly* establishes compliance with minimum wage

19

requirements by paying technicians at a rate above the minimum wage hourly rate for *all* hours on the clock.

In sum, Certified Tire makes payments to its technicians on an hourly basis at an hourly rate above the minimum wage for all hours worked, and it provides paid rest periods on the clock as required by law. Thus, based on the undisputed facts regarding the manner in which technicians are compensated under Certified Tire's TCP, plaintiffs have not established that Certified Tire is in violation of the minimum wage requirement and rest period requirement in Wage Order 4.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.

20

Filed 10/4/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CERTIFIED TIRE AND SERVICE CENTERS WAGE AND HOUR CASES | D072265 |
| | (San Diego County No. JCCP4762; San Diego County No. 37-2013-000381-CU-OE-CTL; Riverside County No. RIC1307773) |
| | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed September 18, 2018 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to: All parties