Filed 9/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LEA LIDAY, | B283180 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BC542513 |
| PETER SIM et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Josh M. Fredricks, Judge. (Retired judge of the L.A. Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed with directions.

Schlichter & Shonack, Jamie L. Keeton and Ben Rothman for Defendants and Appellants.

Law Offices of C. Joe Sayas, Jr., C. Joe Sayas, Jr., and Karl P. Evangelista for Plaintiff and Respondent.

## INTRODUCTION

When determining a claim for unpaid minimum wages, does the court presume that a fixed salary paid to a live-in domestic worker—who is exempt from overtime but subject to minimum wage laws—covers only the regular, nonovertime work hours mandated for nonexempt workers? Or, does the court determine the worker's unpaid minimum wages by calculating the difference between the total number of hours she worked at the prevailing minimum wage rate and the amount she received through her salary? That is the question this wage-and-hour appeal poses.

Lea Liday sued her former employers, appellants, for unpaid wages incurred from April 2010 to April 2014. Liday worked for appellants as their children's live-in caretaker for a fixed salary of $3,000 per month. After a bench trial, the trial court found Liday was a "personal attendant" under Wage Order No. 15, 2001 (Cal. Code Regs., tit. 8, § 11150 (Wage Order 15)). It also found Liday's salary did not compensate her at the statutory minimum wage for all the hours it found she had worked. Appellants do not contest the trial court's finding that Liday worked more hours than they had argued at trial, but they do challenge the propriety of the formula the court used to determine Liday's unpaid minimum wages due from April 2010 through December 2013.

Before 2014, live-in domestic workers classified as "personal attendants" were exempt from California's overtime requirements but were entitled to be paid at least the minimum wage for all hours worked. The Legislature passed the Domestic Workers Bill of Rights (DWBR) to provide personal attendants with overtime protection beginning January 1, 2014. Under that law, personal attendants cannot work more than nine hours per day or more than 45 hours per week unless paid one and one-half

2

times their regular rate of pay for all hours worked in excess of those limits. (Lab. Code, § 1454.)[1]

The DWBR applied only to the last three months of Liday's employment. The trial court acknowledged Liday was exempt from overtime requirements for the period from 2010 through 2013. But, to calculate her unpaid minimum wages for that period, the court presumed Liday's salary compensated her for a regular, nonovertime 45-hour workweek—the number of hours above which overtime is due under the 2014 law. It calculated Liday's regular, hourly rate to be $15.38 by dividing her averaged weekly salary by 45 hours and concluded appellants owed Liday minimum wages at that rate for the hours she worked in excess of 45 per week.

Appellants argue the trial court erred when it presumed a 45-hour workweek to make this calculation because Liday was exempt from overtime. They assert the court should have divided Liday's salary by the $8 per hour statutory minimum wage to determine how many hours Liday's salary had covered and then ordered appellants to pay Liday for any uncompensated hours at $8 per hour. The difference is significant. Using the $15.38 per hour rate at a presumed 45 hours per week, the court found appellants owed Liday $265,720.26 in unpaid wages earned before 2014. Applying the minimum wage rate of $8 per hour to each hour the court found Liday worked, the amount drops to under $75,000.

Because personal attendants were exempt from overtime requirements before 2014, we conclude California law in effect at the time did not limit the number of hours a personal attendant's

---

[1] All statutory references are to the Labor Code unless indicated otherwise.

salary could cover, except to require that it pay at least the minimum wage of $8 per hour for each hour worked. As the parties do not dispute the trial court's finding that they did not agree to an hourly rate, and nothing in the record demonstrates they agreed Liday would work a set number of hours per week, the court erred when it presumed Liday's monthly salary compensated her for only 45 hours of work per week. We thus reverse the judgment and remand to the trial court to recalculate the unpaid wages appellants owe Liday for work she performed from April 2010 through December 2013 applying an $8 per hour rate of pay for each hour she worked.

## FACTS AND PROCEDURAL BACKGROUND

Liday was a live-in personal attendant for the two autistic sons of appellants Peter Sim, M.D., and Loraine Diego, M.D., from December 2002 until April 2014. Liday quit in April 2014 and sued appellants for failure to pay overtime, failure to pay wages for all hours worked in violation of the minimum wage law, waiting time penalties, unfair competition, and civil penalties under the Labor Code Private Attorney General Act (PAGA). After a bench trial, the court found in Liday's favor on all causes of action except her PAGA claim and found the relevant claims period to be April 2010 to April 2014.[2] Appellants requested a statement of decision, and the court heard argument on the proposed statement on February 6, 2017.

_____

[2]  Liday's claims for violating the Labor Code were subject to a three-year statute of limitations, but her unfair competition claim extended to the period four years before she filed her action. (Code Civ. Proc., § 338, subd. (a); Bus. & Prof. Code, § 17208.) Accordingly, Liday could recover unpaid wages from April 2010 as restitution under her unfair competition claim. For simplicity, we do not differentiate between Liday's recovery of unpaid wages versus restitution.

4

On March 17, 2017, the court issued its statement of decision and entered judgment in Liday's favor awarding her $403,256.33, including prejudgment interest. The judgment included unpaid wages for the entire claims period, but the only period relevant to this appeal is from April 2010 through December 2013. As appellants do not contest the court's underlying factual findings, we primarily state the facts relevant to the appeal as described in the court's statement of decision.

1. *Liday's personal attendant status*

Sim and Diego, a married couple, are both medical doctors. The couple hired Liday as a live-in caretaker for their son who was born in October 2002. Liday also cared for appellants' second son, born in December 2005. Their first child, who was between eight and 12 years old during the claims period, is severely autistic and nonverbal. Their younger son, between five and nine years old at the time, is mildly autistic. Appellants paid Liday $3,000 a month during the relevant period.[3]

The children went to school Monday through Friday, leaving the house at about 8:00 a.m. and returning at about 2:00 p.m. While at home, appellants' elder son required continuous supervision and attention. He also had sleeping issues. Liday slept in the boy's room to be available to supervise him when he woke up at night. The court found Liday supervised or was available to supervise appellants' children around the clock, except during the time they were at school. It thus concluded Liday worked 18 hours per day on weekdays and 24 hours per day on Saturdays and Sundays. She took about

---

[3]     Appellants sometimes paid Liday $2,500 per month when she took a weekend off work.

three to four weekends off per year, totaling 14 weekends for the entire April 2010 to December 2013 period.

The court also found Liday did not perform significant nonattendant work for the couple and classified her as a "personal attendant" under Wage Order 15. As a personal attendant, Liday was entitled to receive the minimum wage for all hours that she worked but was exempt from overtime requirements during the period from April 2010 through December 31, 2013.[4] For that period, therefore, Liday's recovery was limited to unpaid wages under the minimum wage law. The parties stipulated that the minimum wage during that time was $8 per hour.

2. *Liday's wages and hourly rate*

Liday testified that when she first was hired in 2002, Sim told her he would pay her $1,000 per month to work six days a week. They did not discuss the number of work hours required. Liday testified she began working seven days a week in 2004 after she borrowed money from Sim through pay advances; she also received a raise at that time.[5] She began making $3,000 per month around 2005. The court found Liday credibly testified she and appellants never discussed her hourly rate of pay.

Sim testified he and Liday never discussed salaries during the 2010 to 2014 time frame, but he did when he hired her. Sim also testified Liday began to work seven days a week when he began to advance her pay. Sim said the $3,000 per month was

---

[4] The DWBR governed only the last three months of Liday's employment—January 1, 2014 through April 4, 2014. Appellants do not challenge the court's calculation of overtime and unpaid wages they owed Liday for that period.

[5] Liday testified she paid off the 2004 loan from Sim by 2012.

6

not a salary; he based Liday's pay on an $8 hourly rate and estimated how many hours she worked per day. Appellants kept no record of the hours Liday worked. In preparation for his deposition in this case, Sim created a chart estimating Liday's work at 9.5 hours per weekday at $8 per hour, $82 per week, plus $196 per month to pay for additional hours. Sim "just came up with" the $196 number. The court found Sim's postfiling estimates of Liday's hours and his testimony that he discussed paying her $8 per hour not credible. It found Sim's calculations did not support "his assertion" that he paid Liday $8 per hour.

The court concluded there was "no evidence to prove one way or the other" Liday's hourly rate. It found Liday was not entitled to overtime before January 1, 2014, but was "entitled to be paid wages for each hour" she worked. Because there was no mutual wage agreement, the court presumed Liday's $3,000 per month salary compensated her for nine hours of work per day, 45 hours per week—the regular, nonovertime work hours applicable to personal attendants beginning in January 2014. It thus calculated an hourly rate for Liday at $15.38 by dividing her average weekly salary of $692.31 by 45 hours.

That calculation, proffered by Liday's counsel, was based on the formula used to determine overtime wages for salaried, nonexempt employees found in section 515. Addressing appellants' counsel's argument there was no basis for calculating Liday's hourly rate based on a 45-hour workweek and that section 515 did not apply, the court explained, "I'm not basing it on the fact that someone cited . . . a definitive case or code section about how to calculate this. I'm just persuaded by looking at the whole banana here, that that is the correct way to do this. Even though . . . this is an ex[em]pt employee, . . . and even though she's not entitled to overtime. We have to calculate it based on something. And I understand you want me to calculate it on $8,

but I think that the logic of this is that, and that's what I'm persuaded by, that in the—the nonexempt employees, that—this is the way that they calculate and you agree with that. I just think this is the way we should calculate it in this case, also. . . . It's not because I'm persuaded by some code section or a case."

### 3. *Liday's unpaid minimum wages*

The court applied Liday's "regular rate" of $15.38 per hour to the hours Liday worked in excess of 45 per week to determine her unpaid wages. For the period at issue on appeal, April 2010 to December 2013, the court found Liday worked (a) 138 hours per week for 179 weeks, and (b) 90 hours per week for 14 weeks. Assuming a 45-hour workweek and a $15.38 hourly rate, the court concluded Liday was not paid for 93 hours per week for 179 weeks, $256,030.86, and was not paid for 45 hours per week for 14 weeks, $9,689.40, for a total of $265,720.26 in unpaid wages.[6] The court also awarded Liday prejudgment interest.

Appellants timely moved for a new trial on the ground that the trial court erred in calculating Liday's pre-2014 hourly rate based on the "regular rate" formula for calculating overtime for nonexempt employees. They argued the court should have calculated Liday's pre-2014 unpaid wages based on the minimum wage rate of $8 per hour for each hour she worked. The court heard and denied the motion on May 19, 2017. It reiterated, "I think that this [is] the analogous and appropriate way to

---

[6]   Specifically, the court first determined Liday's averaged weekly salary was $692.31 ($3,000 x 12 months/52 weeks), and then divided it by 45 hours to reach an hourly "regular rate" of $15.38. The court then multiplied the $15.38 hourly rate by the number of hours Liday worked per week in excess of 45 hours to determine Liday's unpaid wages.

8

determine what the regular hourly rate was and that's why I calculated it that way."

This appeal followed.

## DISCUSSION

Appellants challenge only that portion of the judgment awarding Liday unpaid minimum wages from 2010 through 2013. They contend, that because Liday was entitled to be paid the minimum wage, but was exempt from overtime requirements during this period, the court erred when it found Liday's monthly salary compensated her for only 45 hours per week, entitling her to unpaid wages at a "regular rate" of $15.38 per hour for all hours she worked in excess of 45 per week. They argue the court instead should have applied the prevailing minimum wage rate of $8 per hour to all hours Liday worked during the contested period to determine the amount of wages appellants owed. Appellants ask us to reduce Liday's base award of pre-2014 unpaid wages from $265,720.26 to $74,080.17, and to remand the matter to the trial court to reduce the corresponding prejudgment interest due.

Liday acknowledges the court's finding that she was an overtime-exempt personal attendant, but contends its method to calculate her unpaid wages was proper. She argues that as a salaried employee subject to the minimum wage, and without an agreed hourly rate, the 45-hour nonovertime workweek applied to her so that her salary compensated her for 45 hours of work per week and no more. We disagree with Liday's interpretation and application of the law to the unchallenged facts before us.

### 1. *Governing law and standard of review*

"[W]age and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the

9

IWC."[7]  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).)  "The IWC, a state agency, was empowered to issue wage orders, which are legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions." (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 838 (*Mendiola*).) Although the Legislature has since defunded the IWC, its wage orders are still in effect.  (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 43 (*Gonzalez*).)

Wage orders "have the force of law" (*Dynamex v. Superior Court* (2018) 4 Cal.5th 903, 914, fn. 3), and "must be given 'independent effect' separate and apart from any statutory enactments" (*Brinker, supra,* 53 Cal.4th at p. 1027).  Thus, when a wage order and statute overlap, "we will seek to harmonize them, as we would with any two statutes." (*Ibid.*)

Like statutes, the interpretation of a wage order is a question of law that we consider de novo.  (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83; *Gonzalez, supra*, 215 Cal.App.4th at p. 44.)  We apply the ordinary principles of statutory construction to both the Labor Code and the IWC's wage orders, "beginning with and focusing on the text as the best indicator of legislative purpose." (*Brinker, supra*, 53 Cal.4th at pp. 1026-1027; *Mendiola, supra*, 60 Cal.4th at p. 840; *Gonzalez,* at p. 43.) We give the words of the statute (or regulation) "their ordinary and usual meaning" and construe them "in their statutory context." (*Gonzalez,* at p. 43; *Ward v. Tilly's, Inc.* (2019) 31 Cal.App.5th 1167, 1175.)  "When the language is clear, 'we apply the language without further inquiry.' " (*Ward*, at p. 1175.) If the language is susceptible to more than one reasonable

---

[7]  "IWC" stands for Industrial Welfare Commission.  (§ 70.)

interpretation, we "may consider ' "a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." [Citation.]' " (*Gonzalez,* at p. 44.)

We liberally construe state wage and hour laws in favor of the legislative policy to protect workers. (*Gonzalez, supra*, 215 Cal.App.4th at p. 44.) But we must avoid a judicial construction "that renders any part of the wage order meaningless or inoperative" (*ibid.*), or leads to "absurd consequences" (*Singh v. Superior Court* (2006) 140 Cal.App.4th 387, 393).

We also independently review the application of law to undisputed facts. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912.)

## 2.      *Wage and hour laws applicable to Liday*

The payment of a wage lower than the minimum "fixed" by the IWC or applicable law is unlawful. (§ 1197.) Under section 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation." When an employee sues to recover unpaid minimum wages under section 1194, she "actually sues to enforce the applicable wage order." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 62, 64.) "This is because the 'legal minimum wage' recoverable under section 1194 *is* '[t]he minimum wage . . . fixed by the commission' (§ 1197) in the applicable wage order . . . and because employers and employees become subject to the minimum wage only through the applicable wage order and according to its terms [citation]." (*Ibid.*) The prevailing minimum wage "fixed" during the relevant period—to which the parties stipulated—was $8 per hour. (Former § 1182.12, added by Stats. 2006, ch. 230, § 1.)

11

"The number and complexity of wage orders reflect the reality that differing aspects of work in differing industries may call for different kinds of regulation." (*Mendiola, supra*, 60 Cal.4th at p. 839.) The wage order at issue in this case, Wage Order 15, applies to all persons employed in household occupations, including "personal attendants." (Wage Order 15, subd. 1.) As defined by the wage order, "personal attendants" include babysitters and individuals employed "to supervise, feed, or dress a child or person who by reason of advanced age, physical disability, or mental deficiency needs supervision." (Wage Order 15, subd. 2(J).) The court determined Liday was a personal attendant as defined by Wage Order 15. The parties do not challenge that finding on appeal.

Before 2001, Wage Order 15 did not apply to personal attendants at all. (IWC Order No. 15-2000, subd. 1(B) <https://www.dir.ca.gov/iwc/Wageorders2000/iwcarticle15.html> [as of Sept. 24, 2019], archived at <https://perma.cc/X53Z-H3GQ> ["The provisions of this Order shall not apply to personal attendants."].) Personal attendants thus were exempt from *both* the minimum wage and overtime requirements found in Wage Order 15. In 2001, however, the IWC amended Wage Order 15 to remove the personal attendant exemption from its minimum wage requirement. (Compare IWC Order No. 15-2000, subd. 1(B), *supra*, with Wage Order 15, subds. 1(B), 4.) Subdivision 4 of Wage Order 15, entitled "Minimum Wages," provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise." (Wage Order 15, subd. 4(B); subd. (4)(A) ["[e]very employer shall pay to each employee wages not

12

less than [the prevailing minimum hourly wage] for all hours worked"].)

The express language of Wage Order 15, however, unambiguously exempts personal attendants from most of its other provisions, including overtime. (Wage Order 15, subd. 1(B) ["Except as provided in sections 1, 2, 4, 10, and 15, the provisions of this Order shall not apply to personal attendants."].) Thus, the provisions restricting domestic workers' number of hours and days of work, providing meal and rest periods, and requiring employers to keep certain records, among others, did not apply to Liday. (See Wage Order 15, subds. 1(B), 3 ["Hours and Days of Work"], 7 ["Records"], 11 ["Meal Periods"], 12 ["Rest Periods"].)

Unlike overtime-exempt personal attendants, nonexempt employees in general must be paid one and one-half times their "regular rate of pay" if they work more than eight hours per day and 40 hours per week. (§ 510 ["Eight hours of labor constitutes a day's work."].) Similarly, live-in, non-personal attendant domestic workers are entitled to at least three duty-free hours within any 12-hour span of work and may not be required to work more than five days without a day off, unless paid overtime. (Wage Order 15, subds. 3(A)(1), (B).)

The Legislature amended the personal attendant overtime exemption when it enacted the DWBR. Beginning January 1, 2014, under section 1454, a personal attendant may not be employed for "more than nine hours in any workday or more than 45 hours in any workweek unless the employee receives one and one-half times the employee's regular rate of pay for all hours worked over nine hours in any workday and for all hours worked more than 45 hours in the workweek."

It is undisputed, however, that section 1454 did not apply to Liday's claim for unpaid wages incurred from April 2010

13

through December 31, 2013.[8] Thus, Liday was an overtime-exempt personal attendant under Wage Order 15 during the entire period challenged on appeal. Accordingly, for the pre-2014 period, by the express, unambiguous terms of Wage Order 15, appellants were required to pay Liday at least the minimum wage of $8 per hour for all hours she worked, but were not obligated to limit Liday's required daily or weekly work hours or to pay her premium overtime wages. (See Wage Order 15, subds. 1(B), 3(A) & (B) [excluding personal attendants from "Hours and Days of Work" provision that limits a live-in employee's daily and weekly work hours and requires employer to compensate employee at one and one-half times or double her regular rate of pay if those limits are exceeded].)

3. *Pre-2014 California law does not support the court's presumption*

Although Liday was an overtime-exempt employee under Wage Order 15, the court nonetheless determined appellants' pre-2014 minimum wage obligation by applying the formula for calculating salaried, nonexempt employees' "regular rate" of pay of dividing their salary by their regular, nonovertime hours. Liday argues this method was proper because "when an employer chooses to pay an employee not exempt from the minimum-wage laws a fixed monthly salary, such salary constitutes payment only for said employee's regular, non-overtime hours."

While that statement may be true for Liday's 2014 wage claims, it is not for her pre-2014 claims when she was *exempt*

---

[8] No one has argued section 1454 is retroactive and nothing indicates the Legislature intended it to be so. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230 ["statutes operate prospectively absent a clear indication the voters or the Legislature intended otherwise"].)

14

from overtime requirements. The authorities on which Liday relies—section 515, the DLSE Enforcement Polices and Interpretations Manual[9] and *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721 (*Hernandez*)—do not require otherwise. They all relate to calculating unpaid overtime for *nonexempt* employees.

   a.   *The express language of the Labor Code demonstrates the "regular hourly rate" calculation was intended to determine overtime wages for nonexempt employees*

   Liday argues the trial court's calculation of her "regular hourly rate" based on her weekly salary divided by a regular, nonovertime workweek of 45 hours is "congruent with" section 515 and the DLSE Manual. We disagree.

   Section 515, subdivision (d)(1) provides: "*For the purpose of computing the overtime rate* of compensation required to be paid *to a nonexempt* full-time salaried employee, the employee's regular hourly rate shall be 1/40th of the employee's weekly salary." (Italics added.) Section 515, subdivision (d)(2) in turn states that "[p]ayment of a fixed salary to a *nonexempt* employee

---

[9]   The DLSE—Division of Labor Standards Enforcement—is the agency "charged with enforcing California's labor laws, including the IWC wage orders." (*Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 551, 555.) Its most recent policy manual interpreting California's labor laws is published online. (See DLSE, The 2002 Update of the DLSE Enforcement Policies and Interpretations Manual (rev. Aug. 2019) <https://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf> [as of Sept. 24, 2019], archived at <https://perma.cc/AS8Z-K4NC> (DLSE Manual); *Alvarado,* at p. 555.) Although DLSE policies are not necessarily entitled to deference, a reviewing court may adopt the DLSE's interpretation if independently persuaded it is correct. (*Alvarado*, at p. 561.)

shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary."[10]  (Italics added.)  Thus, as we discuss below, an employer may not calculate a *nonexempt* salaried employee's hourly rate by dividing her salary by the combined total number of nonovertime and overtime hours she worked.  Including overtime hours in the calculus would reduce the employee's hourly rate, thereby reducing the base rate for computing her overtime compensation to one lower than if she had worked a regular, 40-hour workweek.  (See *Skyline Homes, Inc. v. Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 250 (*Skyline*).)

Section 515 does not apply to Liday's pre-2014 minimum wage claim, however.  The statute expressly relates to determining the hourly rate for a salaried, *nonexempt* employee for purposes of calculating *overtime* compensation.  As we have said, Liday was exempt from the hours and days of work provision governing overtime under Wage Order 15.  Therefore, before section 1454 became effective no statute or regulation imposed a maximum number of hours Liday could work per week or day—nonovertime hours—or specified the number of hours that constituted a regular workday or workweek for personal attendants.

The DLSE Manual also makes clear the "regular rate of pay" calculation was designed to determine *overtime* compensation.  First, section 49.1.1 of the Manual explains, "*overtime* is computed based on the regular rate of pay."  (Italics added.)  And, section 48.1.2 explains, " 'Workday' is defined in

_____

[10]    This language was added to section 515 effective January 1, 2013.  (Stats. 2012, ch. 820, § 2.)

16

the [IWC] Orders and Labor Code § 500 *for the purpose of determining when daily overtime is due.*" (Italics added.) Section 49.2.1.1 of the Manual, cited by Liday, in turn provides the method for computing the "regular rate of pay" for salaried workers: "Multiply the monthly remuneration by 12 (months) and divide by 52 (weeks) = weekly remuneration. Divide the weekly remuneration by *the number of legal maximum regular hours worked* = regular hourly rate." (Italics added.) That is the formula the court used here, but before 2014, there was no "legal maximum" number of regular hours that Liday could work, rendering that formula inapplicable by the express terms of the statute and DLSE's interpretation of it.

In a colloquy with appellants' counsel, the trial court *agreed* section 515 did not apply to Liday's pre-2014 wages.

> "[Appellants' counsel:] Labor Code [ ]515(d) doesn't apply because she was not entitled to overtime. And the Code itself specifically says that that applies only to nonexempt salaried employees. During that period of time, she was an exempt employee because she was a personal attendant.
>
> "The Court: I agree."

Despite this acknowledgement, the court nevertheless computed Liday's pre-2014 hourly rate based on a maximum 45-hour work week, finding the calculation for nonexempt, salaried workers "analogous." But by doing so, the court effectively applied section 1454's maximum hours requirement retroactively without legal basis.

Based on the plain language of the statute and wage order, before 2014 Liday's $3,000 per month salary ($692.31 per week) legally compensated her for *whatever* total number of hours she worked, be it 20, 45, or 80 hours per week. The only limitation the law placed on Liday's salary was that it must compensate her

17

at least at the minimum wage rate of $8 per hour for every hour she worked.  Appellants concede they failed to do so and owe Liday unpaid wages.  But, the law does not require them to pay Liday $15.38 per hour because of that failure or retroactively to limit Liday's salary to cover only 45 hours per week.

       *b.*     *Case law also does not require that Liday's salary cover only regular, nonovertime hours*

In support of her argument that the court's calculation was proper, Liday focuses on the Court of Appeal's holding in *Hernandez* that, "[a]bsent an *explicit, mutual* wage agreement, a fixed salary does not serve to compensate an employee for the number of hours worked *under statutory overtime requirements*." (*Hernandez, supra*, 199 Cal.App.3d at p. 725, second italics added.)  This holding from *Hernandez* is inapplicable to Liday's pre-2014 wage claim.

There, defendant hired plaintiff to work as a butcher for a fixed salary of $300 per week.  (*Hernandez, supra*, 199 Cal.App.3d at p. 724.)  The butcher, who was entitled to overtime, testified he worked every day for 13 hours a day during the disputed period.  (*Ibid*.)  Defendant testified the butcher's salary included overtime wages because the butcher had agreed to work every day for nine hours a day—63 hours per week—for the minimum hourly wage, and the combined nonovertime and overtime wages due for 63 hours was less than $300 a week. (*Ibid*.)  The trial court found the butcher had worked some overtime, but entered judgment in favor of defendant, finding the butcher failed to meet his burden of proof to establish the number of overtime hours he had worked.  (*Id*. at p. 725.)

The Court of Appeal reversed, finding the butcher had met his burden of proof.  (*Hernandez, supra*, 199 Cal.App.3d at p. 725.)  The court first found there was no evidence the parties had agreed to the butcher's working hours or hourly rate.  (*Ibid*.)

18

As a result, it concluded the butcher's $300 per week compensation "must be construed as the payment he received for a regular workweek," not including overtime. (*Ibid*.) Citing section 510, which provides for an eight-hour workday and overtime wages for hours worked in excess of eight per day or 40 per week, the court explained, "[a]bsent an *explicit, mutual* wage agreement, a fixed salary does not serve to compensate an employee for the number of hours worked under statutory overtime requirements"—the passage relied on by Liday. (*Hernandez,* at p. 725.)

In other words, the butcher's $300 per week salary could not compensate him for hours he worked in excess of the statutorily mandated eight hours per day and 40 hours per week. He thus was entitled to unpaid overtime wages in addition to his salary. (*Hernandez, supra,* 199 Cal.App.3d at pp. 725-726.) The Court of Appeal also directed the trial court to draw "whatever reasonable inferences it [could] from the employee's evidence" to determine his overtime hours because the employer had failed to keep accurate records of the butcher's hours. (*Id.* at p. 728.)

As with section 515, and the corresponding provisions of the DLSE Manual, the key difference here is that Liday was not subject to any statutory or regulatory overtime requirements like the butcher. Her $692.31 per week compensation logically could not be presumed to cover only "nonovertime" hours when she had no set or maximum hours to exceed.[11] The butcher's weekly

---

[11] Liday asserts that the trial court "expressly found" Liday's salary "covered only her regular non-overtime hours." The statement of decision cites the quoted passage above from *Hernandez*, but the trial court never found the parties agreed to the number of hours Liday would work per day or per week. The court made clear it *presumed* the 45-hour "regular" workweek

salary could compensate him only for working nonovertime hours—40 hours per week and eight hours per day under section 510—because to allow otherwise would circumvent statutory overtime requirements. Nothing in *Hernandez* suggests that a salary paid to an employee exempt from overtime cannot compensate the employee for hours worked in excess of what otherwise would be considered nonovertime hours for a nonexempt employee. Such an interpretation of *Hernandez* is nonsensical. If an employee is exempt from overtime, there can be no "nonovertime" or "overtime" hours. Based on the law at the time, appellants could not have anticipated that Liday's $3,000 per month salary would compensate her for nonovertime hours only when she was exempt from overtime.

> c. *Liday cites no authority to support her contention she was exempt from overtime wages, but not overtime hours*

Liday also seems to contend that as a salaried personal attendant, she was exempt from "the separate requirement of a premium overtime rate for overtime work," but was not excluded from application of regular, nonovertime work hours.

We cannot agree with Liday's interpretation of her overtime-exempt status. Liday would have us read the Labor Code and Wage Order 15 as precluding an overtime-exempt personal attendant's regular workweek from exceeding the statutory maximum number of hours specified for nonexempt employees. Nothing in the Labor Code or Wage Order 15 suggests such an interpretation.

---

applied to calculate Liday's unpaid minimum wages and did not base its decision on any statute or case.

20

First, the maximum hours requirement logically cannot be separated from the premium overtime rate required for hours worked beyond the legal maximum. The two requirements go hand in hand. Premium overtime pay was instituted *to enforce* statutory maximum working hours by obligating employers to pay higher hourly rates to employees whose work exceeded those daily or weekly limits. (*Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 37 [premium pay accomplishes "IWC's goal of enforcing maximum hours"]; *Skyline, supra*, 165 Cal.App.3d at p. 250 ["Premium pay for overtime is the primary device for enforcing limitations on the maximum hours of work."].) Requiring nonovertime hours without requiring payment of overtime wages would not achieve this goal.

Liday contends, "Wage Order 15 clearly delineates between, on the one hand, regular, non-overtime work hours, and on the other hand, overtime hours. The regular, non-overtime hours are those up to 9 hours in a workday and 45 hours in a workweek, while the overtime hours are those beyond those thresholds." That distinction may be true, but Liday fails to note that Wage Order 15 also "clearly" exempts personal attendants like Liday from the very provision she cites. That section limits both the maximum number of hours a domestic employee may work *and* provides for premium overtime wages should those hours be exceeded. (Wage Order 15, subd. 3.) That provision expressly does not apply to personal attendants.

Had the IWC intended the wage order's hours of work limitations to apply to personal attendants without providing them with premium wages, it would not have excepted application of the *entire* "hours and days of work" provision to personal attendants when it removed the minimum wage exemption in 2001. (Compare IWC Order No. 15-2000, subd. 1(B), *supra,* with Wage Order 15, subd. 1(B).) But it did.

21

We cannot interpret Wage Order 15 as nonetheless intending to apply its limitations on nonovertime hours—without premium overtime rates—to *salaried*[12] personal attendants. To do so not only would lead to the "absurd consequence[ ]" of applying *part* of the wage order's overtime requirement to an employee explicitly exempt from *all* of its overtime requirements, but also would fail to give effect to Wage Order 15's explicit exemption of personal attendants from that *entire* requirement— both premium wages and maximum hours. (*Singh v. Superior Court, supra*, 140 Cal.App.4th at p. 393 [interpretation of wage order must not lead to "absurd consequences"]; *Gonzalez, supra*, 215 Cal.App.4th at p. 44 [construction of wage order must not render part of it "meaningless"]; *Brinker, supra*, 53 Cal.4th at p. 1027 [wage orders "must be given 'independent effect' "].) We thus conclude Liday was not subject to any set number of regular, nonovertime work hours under Wage Order 15 on the ground she received a fixed salary.

Moreover, the wage order's minimum wage requirement protects a salaried, overtime-exempt employee from the lack of an agreed-upon hourly rate: if the salary compensates the employee at less than the prevailing minimum wage for each hour the employee works—as occurred here—the employee may recover the difference. (§ 1194.) With no express restriction on the number of hours the employee may be required to work, however, no regular rate of pay calculation is mandated by assuming the

---

[12] Nothing in Wage Order 15 prohibits an employer from paying a personal attendant by salary, as long as the employer pays the employee the legal minimum wage. (Wage Order 15, subd. 4(B) [employer must pay employee the minimum wage "whether the remuneration is measured by time, piece, commission, *or otherwise*" (italics added)].)

salary covered only the statutory regular, nonovertime hours for nonexempt employees.

The Legislature's enactment of the DWBR supports our analysis. By setting a maximum 45-hour workweek and nine-hour workday for personal attendants (§ 1454), the Legislature acknowledged, that before January 2014, employers were not precluded from requiring personal attendants to work more than 45 hours per week or nine hours per day at only the minimum wage rate. As one commentator noted, "Before the DWBR, personal attendants were not entitled to any overtime compensation, even if they provided 24-hour, live-in care, seven days a week. Personal attendants did not have to receive any duty-free meal or rest breaks. Furthermore, unlike many other exemptions, such as the executive, administrative, and professional exemptions, personal attendants did not have to be paid a salary equal to two times the applicable minimum wage for full-time work. In other words, an employer could lawfully require a personal attendant to work 24 hours a day, six days a week and only pay that employee the minimum wage." (Rehwald, *Caregiver Care: Current Law Limiting the Amount of Time Personal Attendants Spend on Tasks Other than Caregiving May Represent Liability Issues for Employers* (Nov. 2016) 39 Los Angeles Lawyer 20, 22.)

The Legislature understood personal attendants were "completely exempt" from overtime. (Assem. Com. on Labor & Employment, Analysis of Assem. Bill No. 241 (2013-2014 Reg. Sess.) as amended Mar. 19, 2013, p. 5 (DWBR Analysis) [" 'Personal attendants' are completely exempt from the general overtime requirements of Wage Order 15. Therefore, under the Wage Order, 'personal attendants' are only required to be paid straight-time for all hours worked, regardless of whether they work more than eight hours in a day or 40 hours in a week."].)

Indeed, the DWBR was introduced specifically to correct the inequity of the law's exclusion of personal attendants from overtime protections, while granting those protections to other types of domestic workers.  (See DWBR Analysis, p. 9.)

Only when Liday became entitled to overtime protections in January 2014 did California law require the court to calculate Liday's overtime wages by determining Liday's $15.38 per hour regular rate of pay based on a 45-hour workweek and then to apply that rate to the hours she worked in excess of 45 on a weekly basis.  But before that day, Liday was "completely exempt" from overtime.  No statutorily mandated "regular hours" applied to her, nor, as we discuss, had the parties agreed on a maximum number of daily or weekly hours to which her salary applied.

4. **Armenta *does not apply because the parties did not agree to an hourly rate higher than the minimum wage or to a set number of work hours***

Liday also contends appellants' proposed wage calculation —paying Liday the minimum wage of $8 per hour for each hour she worked—would average her monthly salary over all the hours she worked to effectively compensate her at a lower rate for some of the hours she worked, a practice prohibited by California law as expressed in *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314 (*Armenta*).  Liday and the employees in *Armenta* are not similarly situated, however.

In *Armenta*, the Court of Appeal agreed a company violated California's minimum wage statute, section 1194, when it did not pay its employees for "nonproductive" time, such as travel time and time spent on paperwork.[13]  (*Armenta, supra*, 135

---

[13]    To avoid removal to federal court, the plaintiff employees amended their complaint to seek only unpaid minimum wages

24

Cal.App.4th at pp. 317, 324.)  Under the terms of a collective bargaining agreement, the company paid its union employees, who maintained utility poles, hourly wages higher than the minimum wage for "productive time."  (*Id.* at pp. 316-317.)  The company argued it had complied with the minimum wage law because its employees' weekly pay resulted in an average hourly rate (factoring both paid time and unpaid nonproductive time) higher than the applicable minimum wage.  (*Id.* at p. 319.)  The trial court rejected this averaging method, accepted by federal courts, concluding it would permit the employer to "extract lengthy work weeks from its employees without paying them for all hours worked."  (*Id.* at pp. 320-321.)

The Court of Appeal agreed the federal "model of averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law [was] inappropriate" considering California's "strong public policy in favor of full payment of wages for all hours worked."  (*Armenta, supra*, 135 Cal.App.4th at p. 324.)  Rather, in California "[t]he minimum wage standard applies to each hour worked by [employees] for which they were not paid."  (*Ibid.*)

The court reached its holding after examining sections 221, 222, and 223.  (*Armenta, supra*, 135 Cal.App.4th at pp. 323-324.)  Section 221 prohibits an employer from collecting from an employee any part of the wages the employer has paid to the employee.  Section 222 prohibits employers, in the case of a collective bargaining wage agreement, from withholding from employees "any part of the wage agreed upon."  And, section 223

---

under section 1194, striking all references to unpaid overtime wages.  (*Armenta, supra*, 135 Cal.App.4th at p. 318.)

25

prohibits employers from "secretly pay[ing] a lower wage while purporting to pay the wage designated by statute or by contract."

The court concluded these sections "articulate the princip[le] that all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." (*Armenta, supra*, 135 Cal.App.4th at p. 323.) Thus, the trial court had determined correctly that the employer must pay its employees the minimum wage for each of the hours they had not been paid despite having paid them a rate "far in excess of the minimum wage" for their "productive" hours. (*Id.* at pp. 319, 324.) Adopting the averaging method proposed by the employer would "contravene[ ]" the Labor Code and "effectively reduce[ ] [employees'] contractual hourly rate." (*Id.* at p. 323.)

Liday contends the same principle applies here—to average her salary over all the hours she worked would result in "stretch[ing]" her salary to cover hours appellants argued at trial were noncompensable. We disagree.

Here, no collective bargaining agreement is at issue, and the court found the parties did not agree to an hourly rate, much less an hourly rate higher than the minimum wage as the parties had in *Armenta*. Appellants thus are not trying to average an agreed higher wage to cover compensated and noncompensated hours. In *Armenta*, the averaging method would have resulted in taking a portion of the employees' agreed higher rate to cover hours for which they had not been paid at all. They would not have received the wages due them under their collective bargaining agreement.

Appellants agreed to pay Liday $3,000 per month, but there is no evidence—nor did the court explicitly find—the parties agreed this salary would compensate Liday for a 45-hour workweek or any other specific number of work hours that could

26

compute to an agreed hourly rate higher than $8 per hour.[14] Liday argues appellants now are attempting to include work hours they originally did not treat as covered by her $3,000 per month salary—" 'downtime between 9:00 a.m. and 2:00 p.m. and . . . sleep time between 10:00 p.m. and 5:45 a.m.' "  But, the fact remains that Liday was exempt from overtime laws and the parties never agreed she would work a specific number of hours per day or week.[15]

Paying Liday the $8 minimum hourly wage for each hour the court found she worked, therefore, would not "effectively reduce[ ]" her contractual hourly rate as in *Armenta*.  Nor would doing so violate section 223 by paying her a lower wage than designated by statute or contract.  The parties may not have

---

[14]    As we have described, there was testimony the parties discussed Liday working six days per week when she was hired in 2002 (and made less), but she then began to work seven days per week with only a few weekends off per year.  The parties never discussed her working hours or hourly rate, however.

[15]    In any event, Liday's argument does not support her implied conclusion that excluding this "downtime" from her salary would result in an agreed hourly rate higher than the minimum wage.  Excluding the 7.75 hours of sleep time each day and the five hours of downtime during the weekdays (when the children were at school), results in a total of 88.75 work hours for a seven-day week (11.25 hours for five days and 16.25 hours for two days).  Based on her $692.31 weekly salary, 88.75 hours of work results in an hourly rate of $7.80, which is less, not more, than the minimum wage.  Liday did take a weekend off some months, but she also was paid less during those months.  In any event, even if the math resulted in an hourly wage higher than $8 per hour for some weeks, the court concluded the parties did not agree to an hourly rate and no one testified Liday was expected to work only 45 hours per week.

agreed to the specific hourly rate of $8 per hour, as Liday notes, but as an overtime-exempt employee, the law required only that appellants pay her the statutory minimum wage of $8 per hour for each hour she worked, not $15.38 per hour. Thus, calculating appellants' minimum wage obligation by multiplying the number of hours the court found Liday worked by the $8 per hour legal minimum wage and then deducting the amount she received[16] will not result in paying Liday less than the statutory or contractual rate, crediting part of that rate against appellants' obligation, or extracting longer hours from Liday than the law allowed at the time—the concerns expressed in *Armenta.*

**5.    *Conclusion***

No one contests the trial court's categorization of Liday as a personal attendant. The trial court and Liday acknowledged she was exempt from overtime before January 1, 2014. But instead of applying the $8 per hour minimum wage to each hour Liday worked, the court calculated her rate of pay based on the formula used to determine payment of overtime wages for nonexempt employees. As a personal attendant, Liday was exempt from overtime as a matter of law—no statute or wage order limited the number of hours her salary could cover. Payment of at least the minimum wage for each hour she worked was the only limitation.

---

[16]    The parties discuss the math in terms of dividing Liday's weekly salary by the total number of hours she worked (appellants) or 45 hours (Liday) to determine the amount of minimum wage she was underpaid. We find it less cumbersome to describe appellants' proposed calculation as multiplying the total number of hours Liday worked by the $8 minimum wage to determine what she should have been paid. The result is the same.

Liday argues section 1194 does not require the court to default to the lowest allowable amount of minimum wage fixed by the IWC. But section 1194 does not entitle Liday to an hourly wage higher than the minimum wage when the parties did not agree to it. Nor does it allow the court to impose a 45-hour workweek on an overtime-exempt employee when the parties did not agree her salary would pay for a certain number of work hours. While it was proper for the court to determine Liday's regular rate of pay based on a 45-hour workweek for the hours she worked beginning January 1, 2014, the law in effect before that time did not require appellants to limit the salary they paid Liday to cover just 45 hours of work per week.

As there was no basis in law or contract for the court to presume Liday's salary covered a 45-hour workweek and require appellants to pay her $15.38 for hours she worked in excess of 45 per week, we reverse the court's judgment with respect to Liday's second and fourth causes of action[17] for unpaid wages and restitution due from April 2010 through December 2013. Based on an $8 per hour rate and the court's uncontested finding that Liday worked a total of 25,962 hours from April 2010 through December 2013, Liday was entitled to total compensation of $207,696.00 for that period. Because appellants already paid her $133,615.83, she is entitled to an award of $74,080.17 in combined restitution and unpaid wages for that period.

**DISPOSITION**

The judgment is reversed and remanded as to Liday's second and fourth causes of action with instructions to the trial court to recalculate the amount of unpaid wages due Liday from April 2010 through December 31, 2013 (as unpaid wages from

---

[17] We refer to Liday's causes of action as the court numbered them in its judgment.

29

2011 to 2013 and restitution from 2010 to 2013) by applying an $8 per hour wage rate to all hours the trial court found Liday worked during that period. The trial court also is to hold further proceedings to redetermine the prejudgment interest owed on the recalculated unpaid wages.

Appellants are to recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**

EGERTON, J.

We concur:

LAVIN, Acting P.J.

HANASONO, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.